**Bobby Joe FIELDS, Petitioner,**

v.

**STATE of Oklahoma, Respondent.**

No. C–94–414.

Court of Criminal Appeals of Oklahoma.

July 31, 1996.

Rehearing Denied Oct. 8, 1996.

Catherine Burton, Timothy Wilson, Assistant Public Defenders, Oklahoma City, for Petitioner at trial.

Robert H. Macy, District Attorney, Steve Deutsch, Assistant District Attorney, Oklahoma City, for the State at trial.

Wendell B. Sutton, Assistant Public Defender, Oklahoma City, for Petitioner on appeal.

W.A. Drew Edmondson, Attorney General, William H. Humes, Assistant Attorney General, Oklahoma City, for the State on appeal.

## OPINION DENYING WRIT OF CERTIORARI

LANE, Judge:

On February 7, 1994, Petitioner, Bobby Joe Fields, entered a blind plea to a First Degree Felony Murder charge in the District Court of Oklahoma County, Case Number CF-93-1352, before the Honorable James L. Gullett, District Judge. The State had filed a Bill of Particulars alleging the presence of three aggravating circumstances: that the crime was committed to avoid or prevent lawful arrest or prosecution; that Petitioner was previously convicted of a felony involving the use or threat of violence to the person; and that Petitioner constituted a continuing threat to society. A sentencing hearing was conducted March 28–29, 1994. On April 7, 1994, the trial court formally sentenced Petitioner to death, finding that the State had sufficiently proven the existence of all three aggravators.

On April 15, 1994, Petitioner timely filed his motion to withdraw plea. On May 13, 1994, a hearing was held and the motion was denied. On November 14, 1994, Petitioner filed his Petition for Writ of Certiorari appealing the denial of his motion to withdraw, and requesting mandatory death sentence review.

Petitioner raises the following propositions of error[1] in support of his writ:

I. The District Court lacked subject-matter jurisdiction to accept Petitioner's guilty plea because the Information failed to state facts to allege each element of First Degree Burglary Felony Murder;

II. Petitioner did not "knowingly" enter his blind plea of guilty;

III. The blind plea of guilty entered by Petitioner was a product of improper or undue influence, persuasion, fear, duress or coercion, and was thus not "voluntary";

IV. Petitioner had viable defenses which should be presented to a jury;

V. Petitioner was denied effective assistance of counsel as guaranteed by the state and federal constitutions;

VI. The evidence was insufficient to support the sentencer's finding that the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution;

VII. The evidence presented was insufficient to support the finding that Petitioner was previously convicted of a felony involving the use or threat of violence to the person;

VIII. The evidence presented was insufficient to support the finding of a probability that Petitioner would commit criminal acts of violence that would constitute a continuing threat to society;

IX. The "continuing threat", "avoiding arrest" and "prior violent felony" aggravating circumstances are invalid because they are being applied in an unconstitutionally vague and overbroad manner;

X. Petitioner was denied a reliable sentencing trial to the extent the sentencing judge relied upon the same evidence to support the "prior violent felony" and "continuing threat" aggravating circumstances;

XI. One or more mitigating circumstances outweighed any or all of the remaining valid aggravating circumstances;

---

1. Petitioner alleges fifteen propositions of error, each containing multiple sub-propositions. Only the main proposition of error listed for each alleged error is set out in this opinion. For the record, all of Petitioner's propositions of error were reviewed and considered by this Court, as were his supplemental authorities.

XII. The death penalty is excessive and disproportionate in this case considering both the crime and the defendant;

XIII. The sentencer erred in failing to weigh mitigating circumstances collectively against each of the aggravating circumstances separately under 21 O.S.1991, § 701.11;

XIV. The accumulation of errors in this case so infected the proceedings with unfairness as to deny Petitioner due process of law; and,

XV. If Petitioner's death sentence is vacated, he is entitled to a remand for jury sentencing.

## FACTS

Petitioner is an admitted cocaine addict. On March 2, 1993, Petitioner, his girlfriend and her two adult daughters had already exhausted their combined March AFDC (Aid for Families with Dependent Children) money on crack cocaine. In an effort to procure funds for more crack, Petitioner asked a neighbor if he would like to purchase a T.V. and V.C.R. for $70. The neighbor was interested but did not have the funds to purchase the items. Likewise, Petitioner did not have either a T.V. or a V.C.R. to sell. Petitioner left the neighbor's house, telling the neighbor he would return shortly.

From the neighbor's house Petitioner went down the block to Louise Schem's house to burglarize it, thinking she was not at home. Schem knew Petitioner from the neighborhood. He had been to her house earlier in the day asking for work. Petitioner was hoping he could steal Schem's T.V. and V.C.R. Unfortunately, while in the process of burglarizing the victim's house, she emerged from a bedroom and confronted Petitioner with a gun. The two wrestled each other for the gun, out onto the front porch of the house and down the steps. A passerby heard the victim yell for help, and stopped his car. The witness heard a gunshot and saw Schem fall, but was unable to identify Petitioner as the shooter. After shooting Schem, Petitioner took the gun from her and sold it to the neighbor for $40 instead of selling him the promised T.V. and V.C.R.

Petitioner then purchased more crack cocaine with the money. He was arrested several hours later at his girlfriend's house.

Petitioner admitted killing Schem, but claimed it was accidental. Petitioner alleged the victim's finger was on the trigger when the gun discharged.

Testimony from the medical examiner was that the gunshot wound entered behind the victim's ear, with a straight line trajectory, and exited out of her mouth, severing her spinal cord in the process. He also testified the wound was not a contact wound and the gun was at least 6 to 12 inches away from the victim when it was fired. The only witness to the crime, while unable to identify Petitioner as the shooter, testified the shooter looked at him (the witness), looked back at the victim, and then fired the gun.

There was additional testimony Petitioner claimed he was not sorry for the killing; that "white people deserved it" (Petitioner is black, the victim white); and that he wanted to be on "America's Most Wanted". Petitioner also admitted to having smoked crack cocaine the day of the killing.

■ Petitioner alleges at Proposition I that the District Court lacked subject matter jurisdiction to accept his guilty plea, because the Information failed to state the facts necessary to allege each of the elements of the underlying felony to support the felony murder Information. The Amended Information in this case read, in pertinent part, as follows:

On or about the 2nd day of March, 1993, A.D., the crime of Murder in the First Degree was feloniously committed in Oklahoma County, Oklahoma, by Bobby Joe Fields, who while in the commission of Burglary in the First Degree, willfully and unlawfully killed Louise Schen (sic) by shooting her with a pistol, inflicting mortal wounds which caused her death on the 2nd day of March, 1993, contrary to the provisions of Section 701.7 of Title 21 of the Oklahoma Statutes, and against the peace and dignity of the State of Oklahoma;

## OR IN THE ALTERNATIVE

On or about the 2nd day of March, 1993, A.D., the crime of Murder in the First Degree was feloniously committed in Oklahoma County, Oklahoma, by Bobby Joe Fields, who wilfully, unlawfully and with malice aforethought, killed Louise Schen (sic) by shooting her with a pistol, inflicting mortal wounds which caused her death on the 2nd day of March, 1993, contrary to the provisions of Section 701.7 of Title 21 of the Oklahoma Statutes, and against the peace and dignity of the State of Oklahoma
. . .

■ An information is sufficient if it (1) contains every essential element of the offense charged, and (2) fairly informs the accused of the charges against which he must defend. *See Tiger v. State,* 900 P.2d 406, 408 (Okl.Cr.1995); *Miller v. State,* 827 P.2d 875, 877 (Okl.Cr.1992); *Lambert v. State,* 888 P.2d 494, 504 (Okl.Cr.1994); *Plotner v. State,* 762 P.2d 936, 940 (Okl.Cr.1988). The test to assess the sufficiency of the information is two-pronged: (1) whether the defendant was in fact misled by it, and (2) whether conviction under it would expose the defendant to the possibility of being put in jeopardy a second time for the same offense. *Lambert,* 888 P.2d at 504; *Wolfenbarger v. State,* 710 P.2d 114, 115 (Okl.Cr.1985), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986); *Jefferson v. State,* 675 P.2d 443, 445 (Okl.Cr.1984). We have previously determined that the elements of the underlying felony are essential to a felony murder charge. *Tiger,* 900 P.2d at 408.

In *Parker v. State,* 917 P.2d 980 (Okl.Cr. 1996), we reviewed our rulings in *Tiger* and *Miller* and held that an information need not allege each element of a crime in order to confer jurisdiction. Rather, the question is whether the information gives the defendant notice of the charges against him and apprises him of what he must defend against at trial. *Id.* at 986. The Information here alleged in the alternative that Petitioner was guilty either of malice murder or felony murder. The Information, while lacking specificity, gave the defendant sufficient notice of

the charges against him. It recited the name of the defendant, the date, place, weapon, and method of the crime, identified the crime victim, and specified the statutes under which Petitioner was charged.

Additionally, Petitioner entered a blind plea to the felony murder charge filed against him. At the hearing where Petitioner entered his plea, he testified that he knew all of the elements of the crime(s) he was charged with and was aware that if he chose to go to trial the burden was on the State to prove each of the elements of the crime(s). At the plea hearing, the following exchange took place between Petitioner and the trial court:

> THE COURT: You're swearing under oath the statements you've made in this affidavit are true and correct?
>
> DEFENDANT: Yes, sir.
>
> COURT: That you did on the 2nd day of March, 1993, at 1324 North Indiana in Oklahoma City, Oklahoma County, that "I, Bobby Joe Fields, went into Louise Schem's house. I thought she wasn't home. It was my intention to burglarize her house and to take her television to support my drug habit. After I went into her house, and as I was trying to unhook the TV, she came at me with a gun. We got in a fight over the gun. In the struggle, I shot her one time, causing her death." Is that correct?
>
> DEFENDANT: Yes, sir.

For Petitioner to claim now that he did not know all of the elements of the crimes he was charged with when he specifically testified to the contrary is simply not believable. We find no error here.[2]

■ At Proposition II, Petitioner claims he did not knowingly enter his guilty plea. This Court has determined that trial judges should observe the procedures and guidelines set forth in *King v. State,* 553 P.2d 529, 535 (Okl.Cr.1976) in accepting a defendant's guilty plea, to assure that it is knowingly and voluntarily entered. The findings of the trial court should be enunciated on the record for

---

2. This author applies the above reasoning as a result of *stare decisis.* Otherwise, I would find no error for the reason expressed in my concur in result in *Parker.*

review to preclude any question on appeal. However, we have long held that the protections of *King* do not require mechanical compliance. *Berget v. State,* 824 P.2d 364, 370 (Okl.Cr.1991), *cert. denied,* 506 U.S. 841, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992); *State v. Durant,* 609 P.2d 792, 793 (Okl.Cr.1980). Neither do we require that the trial court undertake some sort of formal ritual in order to satisfy the minimum standards of due process when accepting a guilty plea. *Berget,* 824 P.2d at 370; *Ocampo v. State,* 778 P.2d 920, 923 (Okl.Cr.1989). Instead, we will examine the entire record before us to determine whether the guilty plea was entered in a knowing and voluntary manner.

■ An examination of this record simply does not support Petitioner's claim that he was not fully apprised of the ramifications of entering a plea to felony murder. As a subproposition of error, Petitioner claims he was not advised that he was waiving his right to have a jury determine his sentence by entering a plea. Pursuant to 21 O.S.Supp. 1992, § 701.10(B), if a jury trial has been waived by the defendant's entry of a plea of guilty to the charge of first degree murder, the sentencing proceeding shall be conducted by the trial court.[3] There is no entitlement to jury sentencing on a first degree murder charge once a guilty plea has been entered. Petitioner admits he did not raise the error in question at the trial court level but claims it is fundamental (plain) and can be raised here for the first time. Petitioner's cited authorities do not support his claim.

Petitioner has waived the argument by failing to raise it at the withdrawal hearing, and we review it for plain error only. *Medlock v. State,* 887 P.2d 1333, 1344 (Okl.Cr. 1994); *Simpson v. State,* 876 P.2d 690, 693 (Okl.Cr.1994). Does the trial court need to advise Petitioner that he is waiving the right to jury sentencing by entering a guilty plea? Petitioner cites no authority establishing that requirement. We find no such requirement exists and refuse to establish one here.

■ Even if such a requirement existed, Petitioner is unable to show either surprise or prejudice due to the trial court's failure to specifically advise Petitioner of the waiver. A review of the sentencing hearing reveals that prior to the actual sentencing hearing numerous motions in limine were heard. Numerous defense motions filed with respect to Petitioner's potential jury were dismissed, with defense counsel's statement to the court that the motions were rendered moot by virtue of Petitioner having entered a plea to the charge, as there was no jury. Specifically, defense counsel stated:

> Number forty-three. Motion for jury sentencing. We would ask that be stricken. We've done that by virtue of the fact that we've blind pled to this crime to you, sir.

The court struck the motion, as Petitioner requested. Petitioner specifically waived any right, assuming there was one, to be sentenced by a jury. We find no reversible error here. It is also interesting to note that the majority of Petitioner's remaining arguments center around his claim that he was assured that the *judge* was not going to give him a death sentence. There is no doubt Petitioner knew he was waiving jury sentencing.

Petitioner then claims he was not advised of the elements of First Degree Burglary Felony Murder. We addressed this issue at Proposition I and will not address it further.

■ Petitioner then complains that the sentencing judge was provided with an unredacted copy of his videotaped interview with police which included interrogation accusing him of an unadjudicated homicide. Petitioner complains Judge Gullett viewed a taped police interview wherein Petitioner was questioned concerning another homicide, in addition to the questioning that took place concerning this murder. The tape was provided to the court prior to trial and prior to the plea, in an effort to expedite the *Jackson v. Denno*[4] hearing that would have been required had the case gone to trial. Defense counsel provided the tape to the judge.

---

3. Petitioner does not claim that he is entitled to be sentenced by a jury. Rather he claims he was not informed that he would be sentenced by the trial court upon entering a guilty plea.

4. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

When the tape was entered into evidence, counsel for the state and Petitioner agreed that the entire tape should be entered into evidence, with defense counsel stating "No objection whatsoever, Judge." It was at this point that the State indicated its understanding that the court had reviewed the entire tape. Petitioner now claims that had he known the judge was provided with the entire tape, he would not have entered a plea.[5]

Judge Gullett, at the plea withdrawal hearing, made a record indicating that he did not review the last portion of the tape containing the interview of the unadjudicated homicide. Petitioner claims the judge's assurances are irrelevant, as he (Petitioner) did not have sufficient information to make an informed decision concerning the entering of the guilty plea.

Petitioner's argument is meritless. He first claims that had he known the judge was going to see the entire interview, he would not have entered a plea. However, once the judge confirmed that the only portion of the tape viewed was the part concerning Louise Schem's murder, Petitioner then changes his argument to claim that the actual viewing wasn't the issue: the issue was whether he had all evidence available to make an informed decision about entering a plea. The argument becomes even more suspect when the rest of Petitioner's brief is reviewed. As noted above, his actual complaint is that he did not think that the judge would sentence him to death—regardless of the information viewed or not viewed by the court. There is no error here. Random unsubstantiated claims of error supported by no actual injury will not be considered as proper grounds for reversal.

■ As his next complaint, Petitioner claims he was not informed that relatives of the sentencer (Judge Gullett) had been victims of home invasion crimes. The crimes referred to occurred in 1973 and 1979. In 1973, Judge Gullett's parents' home was burglarized, and in 1979, his cousin's ex-wife was murdered in a similar crime. Petitioner now alleges he would not have pled had he known

of this information. Petitioner cites no authority for his claim that he is entitled to know the background of the sentencing judge, and his claim is overshadowed by his real complaint which is that he did not think the judge would sentence him to death. Petitioner does not claim that the sentence was imposed because the judge's relatives were crime victims almost 20 years ago. He simply claims that he would not have pled had he known of the information.

This same argument, raised at the hearing on Petitioner's motion to withdraw his plea, was disputed by Judge Gullett who explained that the murder of his cousin's ex-wife and his parent's burglary had not entered his mind for over 15 years, and that the incidents in no way influenced the sentence imposed. The judge stated:

> Whether or not the Court has had problems in its background as far as my parents being burglarized some twenty years ago, which I hadn't even thought of until I saw it in this. Or my cousin's ex-wife, which was divorced some three or four years, was murdered, I hadn't even thought of that in fifteen years. The first time I would let an incident like that interfere with any decision I would make on this bench, I would tell you and promise you under oath that I would step down from this bench and resign.

Petitioner presents no authority for his position that requires voir dire of sentencing judges. Even if such a requirement were present, the claim was presented and properly rejected at the hearing on Petitioner's motion to withdraw. This argument is without merit.

■ The focus of this Court in evaluating whether a defendant should be allowed to withdraw a guilty plea is whether the trial court abused its discretion in failing to allow the plea to be withdrawn. *Allen v. State*, 821 P.2d 371, 375 (Okl.Cr.1991). The only concern is whether the plea was entered knowingly and voluntarily. *Frederick v. State*, 811 P.2d 601, 603 (Okl.Cr.1991). We find no

---

5. Petitioner made this same argument at the motion to withdraw hearing, where it was considered and rejected.

abuse of discretion here and nothing to indicate the plea was not knowing and voluntary.

■ Lastly, Petitioner claims he was not informed of the limited scope of an appeal from a guilty plea. There is no requirement that Petitioner be informed of the scope of an appeal from a guilty plea, and Petitioner cites no relevant authority in support of this position. The plea taken in this case met all of the requirements of *King*, and we find that it was knowingly and voluntarily entered. We find no error here.

■ At Proposition III, Petitioner claims that his plea was a product of improper or undue influence, persuasion, fear, duress or coercion, and was therefore not "voluntary". Petitioner's claim here is twofold. He first alleges he was misinformed of his chances of receiving the death penalty versus life or life without parole by entering a plea, and therefore the advice received from counsel was misleading. Secondly, he alleges defense counsel, in discussions with the court, assumed she had some type of assurance from the court that the death penalty would not be imposed.

Petitioner alleges defense counsel, Catherine Burton, was inexperienced in death cases, which lead to her ineffective assistance in representing him. He fails to mention to the Court that her second chair, Timothy Wilson, was not inexperienced. In fact, at the withdrawal hearing Wilson admitted that he was probably the most experienced death litigator in his office, second only to his boss, the Oklahoma County Public Defender. Regardless of her inexperience in death cases, Burton was not an inexperienced defense attorney. The tone of this entire section of the brief is that counsel had spoken with the court, *ex parte*, on several occasions, and thought that the chances of having the death penalty imposed by the court were less than the chances that a jury would impose the death penalty.

We find nothing in the record to indicate Petitioner and defense counsel were not fully aware that the death penalty was a possibility upon entering a plea. In fact, the record is replete with references to the three punishment options available for consideration and the fact that all three would be considered by the trial court. The record reveals no promises of leniency, threats or coercion as the catalyst for Petitioner's entry of a blind plea and Petitioner's answers to questions asked at the plea hearing support that finding.

We find nothing to support Petitioner's claim that the plea was not knowing and voluntary. This is not to say that Petitioner's plea was entered without immense trepidation and anxiety. Unfortunately, that is not the standard for evaluating a plea of guilty and a subsequent attempt to withdraw the same. Petitioner's claim that counsel's explanation of his chances of receiving the death penalty amounted to coercion, inducing him to unwillingly enter a guilty plea is unsupported by the evidence. There is also no evidence to support his contention that counsel promised him he would not receive the death penalty if he entered a blind plea.

■ Likewise, there is nothing in the record supporting defense counsels' claims that they thought they "had a wink and a nod" from the judge indicating Petitioner would not receive the death penalty if he entered a plea. Logically, there would be no plea in any death case if the defendant thought he or she was going to receive the death penalty, so we do not doubt Petitioner's claim that he felt he was not going to receive such a sentence. But that is not the criteria used for evaluating the blind plea entered to the charges here.

First, it should be noted that there is nothing in the record indicating that any type of plea agreement had been reached with anyone, or any testimony at the withdrawal hearing of such an agreement. Secondly, the complaints voiced reflect more of a "hindsight is 20/20" attitude than anything else. In looking back, defense counsel Wilson now claims the strategy and approach to the case was full of error.

Public defender Pamela Wagner represented Petitioner at the plea withdrawal hearing. An examination of Wilson's testimony at that withdrawal hearing makes several things abundantly clear. Judge Gullett *did not* agree to any sentence prior to the

plea and sentencing hearing; Judge Gullett's integrity is *not* being questioned or impugned, all parties agreeing his behavior is, and was, honorable and above reproach; Petitioner knew he could possibly receive the death penalty and was advised of all of the options available to him; Petitioner was "strongly advised" by defense counsel that his best chance for avoiding the death penalty was to enter a plea; although done with the advice of counsel, Petitioner ultimately made the decision to plead guilty and to testify at the sentencing hearing; Petitioner was not coerced into making the plea; and it was a tactical decision on the part of the public defender's office to recommend to Petitioner that he enter a blind plea.

Burton also testified at the withdrawal hearing. The gist of her testimony was that in reading the judge, and basing her theory of the case upon it being more of a "burglary 2 gone bad" (as opposed to burglary 1, where Petitioner would have known the victim was home), she thought she could plead the case and Petitioner would not get the death penalty. She testified that she was never told by the judge that Petitioner would *not* get the death penalty, only that the judge would, assuming the facts were as she presented them, "very, very, very, very, very seriously consider" not imposing the death penalty. The judge during this conversation allegedly told her he was not going to run for re-election, and Burton somehow took this to mean that political pressure for imposition of the death penalty would not be present in Petitioner's case, thereby making the imposition of the penalty less likely.

Burton claimed at the withdrawal hearing that had she known the State was going to allege the Petitioner knew the victim was at home, she would not have pled him. According to Petitioner, the fact that he was alleged to have known the victim was at home changed the scenario as far as the blind plea and the possibility that the death penalty would have been imposed.[6]

Burton then addressed the issue of the unredacted tape. She apparently overheard the judge, prior to the hearing on and entry of the blind plea, but after the plea papers had been signed, make some statement to the District Attorney and investigating officers about two other officers who, on the same tape, had questioned Petitioner concerning another unsolved homicide. She testified that she didn't question the judge about the incident because she didn't want to anger him right before the plea hearing and she still thought Petitioner was going to get life or life without parole. She also stated she did not want everyone to know that she had let the unredacted tape go to the judge when it was her job to make sure that the right tape got to him. During this testimony, Judge Gullett made a record wherein he stated that he only viewed the portion of the tape dealing with the case in question, and that he did not review Petitioner's questioning on the unsolved homicide.

Burton next discussed the mitigation investigation. Burton was second chair and responsible for the mitigation evidence in *LaFevers v. State*, 897 P.2d 292 (Okl.Cr.1995). Her testimony was that she did extensive work on the mitigation evidence presented in that case and that she knew what mitigation work needed to be done in a death case. She then testified that the mitigation investigator for her office had been hospitalized and did not complete the mitigation assignments given to him on Petitioner's case. (The investigator subsequently died during the course of this case.) She claims she did not ask for a continuance of the sentencing hearing, even though she thought she had insufficient mitigation evidence, because she didn't want to ruin Petitioner's chances of life or life without parole by angering the judge, and that she didn't realize she could ask for a continuance.

Cross-examination of Burton revealed that there was more than a nine month period between the preliminary hearing and the actual trial. Burton extensively questioned and

---

**6.** The State argued that Petitioner had been over at the victim's house earlier in the day, he offered to sell his neighbor a T.V. and V.C.R. prior to the burglary/murder, he admitted being in the house to steal a T.V., he knew the victim was

home because the front door (from Petitioner's own testimony) was partially open and the victim's car was under the carport. Witness Dea Russell also testified Petitioner told her he had gone to the house to take the victim's purse.

received co-operation from the various investigating officers and did extensive research advancing her theory that the gun used in the burglary was fired accidentally. Her ballistics investigator re-charted and re-enacted various shell trajectory patterns; Burton went through the crime scene clothing (victim's and Petitioner's); she examined all of the evidence the State intended to introduce, including the gun. Burton admitted that none of the evidence introduced at the hearing came as a surprise. She also indicated that the taped interview provided to the judge was not provided to him intact by the State as an intentional act of wrongdoing, and that she did not know, for a fact, what portion of the tape the judge had viewed. She also confirmed that the State refused to agree to a plea of life without parole and she was told that Petitioner's only other option was to enter a blind plea. Burton reiterated that Petitioner was not coerced into entering the plea, but that she had advised him to plea. Her claim was that she misinformed Petitioner. There was a six week time lag between the entry of the plea and the sentencing hearing. Burton announced ready to proceed at the sentencing hearing, and did not request a continuance.

Burton testified she "pulled out all the stops" to get Petitioner to plead. She had his sisters talk to him; she evaluated the judge's position and his assurances that he would consider all of the punishments; she had her boss talk to Petitioner; she told him that she thought a jury would give him the death penalty; she told him that since Bob Macy [7] was going to be on the case, Petitioner would be in much worse shape with a jury than if some other assistant district attorney was trying the case alone; she tried to "terrify" him. She finally stated that Petitioner would not have pled if she had not pressured him to do so.

Very telling in this case is the trial court's recollection of the months preceding the plea and sentencing as reflected in the transcripts of the motion to withdraw hearing. Judge Gullett noted that every time he spoke with Ms. Burton it was obvious that she was attempting to get him to indicate what sentence he would impose. He also noted that had Petitioner received life without parole or a life sentence, there would have been no motion to withdraw. Judge Gullett's conclusion was that Petitioner was unhappy with his sentence, but that the plea was voluntarily entered and could not be withdrawn.

There is nothing in the record to indicate the trial court abused its discretion in refusing to allow the plea to be withdrawn. Despite his protestations to the contrary, there is also nothing to indicate that Petitioner did not knowingly and voluntarily, albeit with some anxiety, enter the guilty plea. There is no error here.

■ Petitioner claims at Proposition IV that he had viable defenses to present to a jury which would have negated the State's claim that he specifically intended to kill the victim. Petitioner's argument is irrelevant in light of the felony murder charge. The evidence is quite clear, and Petitioner's testimony confirms it, that he fully intended to burglarize Ms. Schem's home. She was killed during the commission of that crime. There is no specific intent requirement for felony murder. Petitioner also cites no authority for this position, recognizing instead that this Court has previously rejected this same argument. *See Frederick*, 811 P.2d at 603. We see no reason to change our position on this issue.

■ Petitioner next claims at Proposition V that he was denied effective assistance of counsel as guaranteed by the state and federal constitutions, and requests that this Court remand the case to the District Court for an evidentiary hearing on the issue of ineffective assistance. He alleges here that counsel was ineffective for advising him to plea. In analyzing this type of claim, this Court is guided by the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Castro v. State*, 880 P.2d 387, 388 (Okl.Cr.1994); *Cartwright v. State*, 708 P.2d 592, 594 (Okl.Cr. 1985), *cert. denied*, 474 U.S. 1073, 106 S.Ct. 837, 88 L.Ed.2d 808 (1986). The basic test for ineffectiveness of counsel is "whether

---

7. Bob Macy, Oklahoma County District Attorney.

counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064. In determining whether counsel provided "reasonably effective assistance," this Court indulges "a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance...." *Id.,* at 689, 104 S.Ct. at 2065; *Castro,* 880 P.2d at 390. The petitioner bears the burden of showing both that counsel's performance was deficient and that such deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

■ Petitioner's requested relief is unwarranted in light of the record on the motion to withdraw. The record is more than sufficient to determine an ineffective assistance of counsel claim, which, incidentally, is the same claim Petitioner raised at the motion to withdraw. The synopsis of events provided in Proposition III above addresses the issue of ineffective assistance as presented under the guise of Petitioner's claim that his plea was involuntary. There is no error here, and no need for another hearing. The fact that the desired result was not reached in this case does not render defense counsel ineffective. Rather, Petitioner has the burden of proving that but for counsel's actions, the result of this trial would have been different. We see no such evidence before us. We find no error here, and find nothing to support Petitioner's claim that counsel's performance was deficient.

■ Petitioner's claim of ineffective assistance is then extended to include a claim that defense counsel was ineffective at the sentencing hearing for failing to present more mitigating evidence. Once again, a review of the record does not support this claim. First, Petitioner does not specify what, if any, additional mitigating evidence could have been presented in his defense. Secondly, he does not show that the failure to introduce additional mitigation evidence, assuming there was any, would have resulted in a different sentence. Lastly, we see nothing in the record to indicate there was any additional mitigating evidence available as

Petitioner did not have any of the usual problems which are routinely presented as mitigators. Although Petitioner's mother died when he was three and his father abandoned him, all of the witness testimony indicates his oldest sister raised him in a loving, caring family, took him to church, and encouraged him in school. She and her husband raised Petitioner as their own child, along with their other children and Petitioner's younger sister. His sister's husband taught Petitioner to be a mechanic, and the family warned Petitioner after his initial incarceration that they would not tolerate his drug addiction and its accompanying behavior. Petitioner is a crack addict and had been for approximately 8–10 years at the time of the crime. He had been incarcerated three times during that same time period.

It is, at best, a misstatement, and at worst, a fabrication, that no mitigation evidence was presented. Petitioner simply did not experience the hardships that many defendants present to somehow justify and/or explain their behavior. Even if additional mitigating evidence had been presented, there is nothing to indicate the outcome of this case would have been different. The record does not support Petitioner's claim of error.

■ Petitioner next claims that counsel was ineffective in preparing his application to withdraw the guilty plea, alleging first that he was represented at the withdrawal hearing by the same entity that advised him to enter the original plea. Since there was no error in entering the plea, there could be no error in having the same entity represent Petitioner at the motion to withdraw. Even assuming there was error in entering the plea, a review of the record does not support Petitioner's claim. He was more than adequately represented at the withdrawal hearing. Moreover, we have addressed a similar argument in other death cases where the claim has been that appellate counsel was ineffective because they were from the same office as trial counsel, and that argument has been soundly rejected. *See Moore v. State,* 889 P.2d 1253, 1255, n. 3 (Okl.Cr.), *cert. denied,* —— U.S. ——, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995) (no ineffective assistance based on the claim that trial and appellate

counsel were from the same indigent defense entity). We find no error here.

■ He next claims trial counsel was ineffective for failing to argue that the trial judge's participation in the plea negotiations invalidated Petitioner's blind plea as a matter of public policy. In support of this argument, Petitioner cites Rule 11 of the Federal Rules of Criminal Procedure [8] as persuasive authority that the trial court is prohibited from participating in plea discussions.

This argument is spurious. There is nothing to indicate the judge participated in plea negotiations: there was no plea negotiated. The trial court indicated only that it would consider the full range of punishment in the event a plea was entered. There is no error here.

Petitioner then claims trial counsel was ineffective for failing to raise specific grounds for relief in the application to withdraw plea of guilty. Citing *Medlock v. State*, 887 P.2d 1333, 1344 (Okl.Cr.1994) for the proposition that failure to raise an argument in a withdrawal motion waives it, Petitioner claims that should we find the issues in Propositions II, III or V waived by failure to raise at the withdrawal hearing, then such failure constitutes ineffective assistance. We found no error at Propositions II, III or V, so there was no error to waive.

■ Petitioner next claims trial counsel was ineffective at the hearing on the application to withdraw the guilty plea by failing to disqualify Judge Gullett from presiding over the withdrawal hearing. Disqualification would require some showing of partiality, prejudice or bias. There is a general presumption of impartiality on the part of judges as to matters before them. *Carter v. State*, 879 P.2d 1234, 1242 (Okl.Cr.1994), *cert. denied*, ── U.S. ──, 115 S.Ct. 1149, 130 L.Ed.2d 1107 (1995); *Pittman v. State*, 718 P.2d 366, 369 (Okl.Cr.1986). In making a claim of bias, a defendant must show some prejudice which denied him due process or fundamental fairness. *Carter*, 879 P.2d at 1242; *Robison v. State*, 818 P.2d 1250, 1252 (Okl.Cr.1991), *cert. denied*, 503 U.S. 915, 112 S.Ct. 1285, 117 L.Ed.2d 510 (1992). Testimo-

ny at the withdrawal hearing indicated that defense counsel in no way thought Judge Gullett was biased, and in fact noted that he was one of the fairest judges she knew. Likewise, there is nothing in Petitioner's petition for certiorari or the record on appeal to indicate that the judge's refusal to allow Petitioner to withdraw his plea was the result of prejudice, bias or partiality. We find no merit in Petitioner's allegations.

■ At Proposition VI Petitioner alleges the evidence presented was insufficient to support the finding that the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution. The State's theory was that Petitioner knew the victim could identify him, as he had been to her house earlier that day, his girlfriend lived two doors down from the victim, and he shot her to prevent her from identifying him. All parties agreed that Petitioner did not have a gun, and shot the victim with her own firearm. Petitioner and the victim wrestled and she was subsequently shot, the bullet entering behind her ear, straight line trajectory, severing the spinal cord and exiting through her mouth. Petitioner claimed that he panicked and in fighting with the victim the gun went off. The State argued Petitioner deliberately "executed" Schem, this claim being proven by the nature of the wound.

■ The evidence here was sharply disputed. However, the evidence presented by the State, if believed, would support the State's theory. The task of resolving this conflict [weight and credibility of a witnesses testimony] is not an appellate task. The job is properly vested with the jury which is the exclusive judge of the weight of the evidence and the credibility of the witnesses. *Scott v. State*, 808 P.2d 73, 76 (Okl.Cr.1991); *Raymond v. State*, 717 P.2d 1147, 1149–50 (Okl. Cr.1986). As there was no jury in this case, the decision was to be made by the trial court.

In *Drew v. State*, 771 P.2d 224, 227 (Okl. Cr.1989), we summarized the standard under which claims involving sufficiency of the evidence must be reviewed:

---

8. Fed.R.Crim.P. 11(e)(1).

The test to be utilized by a reviewing court when determining if the State presented sufficient evidence to support a conviction where both direct and circumstantial evidence has been introduced is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State,* 709 P.2d 202 (Okl.Cr.1985); *Riley v. State,* 760 P.2d 198 (Okl.Cr.1988.)

*See also Luna v. State,* 815 P.2d 1197, 1199 (Okl.Cr.1991). The issue here turns on credibility and who the judge chose to believe. Viewing the facts here in the light most favorable to the State, we find that the evidence presented was sufficient to support the aggravator in question.

At Proposition VII, Petitioner claims the evidence presented was insufficient to support the finding that he was previously convicted of a felony involving the use or threat of violence to the person. Petitioner's prior conviction was for robbery by force. His judgment and sentence was introduced at trial, and the arresting officer testified that Petitioner was captured at the scene and confessed to committing the crime as charged. The judgment and sentence was admitted without objection and provided sufficient proof of the aggravator. We find no error here.

At Proposition VIII he alleges the evidence presented was insufficient to support the finding that he would commit criminal acts of violence that would constitute a continuing threat. The evidence presented at trial showed that in 1986, Petitioner was convicted of First Degree Robbery against an elderly woman in the parking lot of a local store. The State's position was that Petitioner perpetrated crimes upon elderly women. As additional support for its claim, the State argued that Petitioner was unemployed and an admitted crack addict. The robbery, by Petitioner's own admission, was committed to support his crack habit. Testimony from his expert indicated Petitioner was prone to panic in stressful situations. The evidence also showed that Petitioner left the scene of the murder, sold the victim's gun to an upstairs neighbor, and purchased additional drugs with that money before returning to his girlfriend's house, all within a short period of time.

When the question on appeal goes to the sufficiency of the evidence presented to support an aggravating circumstance, the determination to be made is whether there was any competent evidence to support the State's charge. That evidence must be viewed in the light most favorable to the State. *See Bryson v. State,* 876 P.2d 240 (Okl.Cr.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995); *Romano v. State,* 847 P.2d 368, 387 (Okl.Cr. 1993). Petitioner's previous incarcerations, the calculated nature of the crime here, and his prior history for violently attacking those incapable of defending themselves provided more than sufficient evidence to find the aggravator alleged. We find no error here.

At Proposition IX, Petitioner argues that the aggravators used to support his death sentence are unconstitutionally vague and applied in an overbroad manner. We have repeatedly rejected this same argument. *See Cooper v. State,* 889 P.2d 293, 314–15 (Okl.Cr.1995), *rev'd on other grounds,* —— U.S. ——, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996); *Malone v. State,* 876 P.2d 707, 715–716 (Okl.Cr.1994); *Boyd v. State,* 839 P.2d 1363, 1371 (Okl.Cr.), *cert. denied,* 509 U.S. 908, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1992). We see no reason to change our position here. We find no error.

Proposition X espouses that Petitioner was denied a reliable sentencing trial because the judge relied on the same evidence to support two different aggravators. We rejected this same argument in *Wallace v. State,* 893 P.2d 504, 515–516 (Okl.Cr.), *cert. denied,* —— U.S. ——, 116 S.Ct. 232, 133 L.Ed.2d 160 (1995); *Medlock,* 887 P.2d at 1350; *Trice v. State,* 853 P.2d 203, 220 (Okl. Cr.), *cert. denied,* 510 U.S. 1025, 114 S.Ct. 638, 126 L.Ed.2d 597 (1993); and *Pickens v. State,* 850 P.2d 328, 336 (Okl.Cr.1993), *cert. denied,* 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994). We reject it here also.

Petitioner then claims, at Proposition XI, that the mitigators presented in his

defense outweighed the aggravating circumstances alleged, making imposition of the death penalty improper. Petitioner asserts here that the standard for weighing mitigating circumstances against aggravators is that the latter must outweigh the former "beyond a reasonable doubt." There is no such standard. The process is one of balancing. *Romano*, 847 P.2d at 392. We find there was sufficient evidence to impose the death penalty and find no error here.

Petitioner's claim at Proposition XII is that the death penalty is disproportionate in this case considering the crime and the defendant. Petitioner acknowledges this Court's refusal to review death sentence proportionality. *See Boltz v. State*, 806 P.2d 1117, 1125 (Okl.Cr.), *cert. denied*, 502 U.S. 846, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991); *Foster v. State*, 714 P.2d 1031, 1041 (Okl.Cr.), *cert. denied*, 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986). The consideration here is whether the death sentence was imposed under the influence of passion, prejudice or any other arbitrary factor, and whether the evidence supports the finding of the enumerated statutory aggravating circumstances. *Hawkins v. State*, 891 P.2d 586, 598 (Okl.Cr. 1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995); 21 O.S.1991, § 701.12. There was sufficient evidence to support the aggravators and there is nothing present in the record to indicate that the sentence imposed here was the result of passion, prejudice or any other arbitrary factor.

■ At Proposition XIII, Petitioner alleges the sentencer erred in failing to weigh mitigating circumstances collectively against each of the aggravators individually. Petitioner acknowledges that this Court has specifically rejected this argument in the past, and presents no reason why we should change our position in his case. *See Allen v. State*, 871 P.2d 79, 101 (Okl.Cr.), *cert. denied*, —— U.S. ——, 115 S.Ct. 370, 130 L.Ed.2d 322 (1994).

Petitioner then alleges at Proposition XIV that the accumulation of errors in this case denied him due process. As we have found no error in this case, we cannot find that the proceedings were unfair. We have consistently held that where there is no individual error there can be no reversal for cumulative error. *Hansford v. State*, 764 P.2d 910, 913 (Okl.Cr.1988); *Woods v. State*, 674 P.2d 1150, 1154 (Okl.Cr.1984). *Peninger v. State*, 811 P.2d 609, 613 (Okl.Cr.1991); *Shelton v. State*, 793 P.2d 866, 877 (Okl.Cr.1990); *Jones v. State*, 765 P.2d 800, 803 (Okl.Cr.1988).

Finally, in Proposition XV, Petitioner claims that if his death sentence is vacated, he is entitled to have the case remanded for jury sentencing. As we noted in Proposition II, there is no right to jury sentencing where the defendant enters a plea of guilty to first degree murder. 21 O.S.1991, § 701.10(B). Furthermore, we do not find it necessary to vacate Petitioner's death sentence or to remand the case for any reason.

## MANDATORY SENTENCE REVIEW

Pursuant to 21 O.S.Supp.1991, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the trial court's finding of the aggravating circumstances as enumerated in 21 O.S.1991, § 701.12. After carefully weighing the aggravators and all mitigating evidence, we have determined that the aggravating circumstances alleged here (that the crime was committed to avoid or prevent lawful arrest or prosecution; that Petitioner was previously convicted of a felony involving the use or threat of violence to the person; and that Petitioner constituted a continuing threat to society) upon which the death penalty was based were factually substantiated, and amply supported by the evidence presented at trial. We further find no indication in the record that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.

We find no error present in Appellant's case warranting reversal, modification or dismissal, and therefore **AFFIRM** the judgment and sentence of the trial court.

JOHNSON, P.J., CHAPEL, V.P.J., and STRUBHAR, J., concur.

LUMPKIN, P.J., concurs in results.