132 N.J. Super. 403 (1975)
334 A.2d 47
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GEORGE SOTTERIOU, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 1975.
Decided February 3, 1975.
*405 Before Judges HALPERN, CRAHAY and ACKERMAN.
Mr. Irving I. Vogelman argued the cause for appellant (Messrs. Brown, Vogelman & Ashley, attorneys; Mr. Raymond A. Brown, on the brief).
*406 Mr. Marc J. Friedman, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
PER CURIAM.
Following a four-week trial on a 14-count indictment a jury returned a verdict of guilty against defendant of (1) conspiracy to commit arson (N.J.S.A. 2A:98-1 and 2A:98-2); (2) arson of a building other than a dwelling house (N.J.S.A. 2A:89-2); (3) burning a building with intent to defraud an insurance company (N.J.S.A. 2A:89-3); (4) manslaughter; (5) possession of a switchblade knife (N.J.S.A. 2A:151-62), and (6) giving false information with respect to a crime (N.J.S.A. 2A:148-22.1).[1] Two remaining counts were dismissed by the trial judge. Defendant's motion for a new trial was denied.
Defendant was sentenced to New Jersey State Prison for two to three years for conspiracy, five to seven years for arson, five to seven years for defrauding an insurance company, and eight to ten years for manslaughter. These sentences were to be served concurrently. Additionally, defendant was sentenced to two consecutive one to two-year terms for possession of a switchblade and for giving false information to the police. The sentences aggregated 10 to 14 years.
Before setting out defendant's points of appeal and our disposition of them we will detail so much of the factual record we deem to be illuminative.
A fire heavily damaged the Zoo Tavern in Carteret, Middlesex County, on September 28, 1971. Two deaths resulted from it.
On September 7, 1971  three weeks before the fire  defendant, a fire adjuster, was engaged by Louis Tzatzos and his wife Joan, the proprietor of the Zoo, to adjust *407 another fire which had damaged its basement. On the night of September 27, 1971 defendant, his wife, Joseph D'Orsi and Joanne Sandonato, an indicated coconspirator, dined together. Following dinner defendant drove his wife home and then took D'Orsi and Miss Sandonato to their apartment in Avenel. Miss Sandonato testified that she and D'Orsi entered the apartment at midnight. Approximately 15 minutes later, D'Orsi, who did not own an automobile, left the apartment.
Richard Alexander, a Woodbridge police officer who was conducting a surveillance of D'Orsi's apartment, testified that sometime between 11 and midnight he observed two men drive off in defendant's black Cadillac. Shortly after midnight three witnesses saw D'Orsi and Louis Tzatzos in the Sports Rest Tavern in Carteret. The proprietor, Hank D'Orsi, testified that his brother Joseph D'Orsi and Louis Tzatzos conferred in a back room and departed together between 2:30 and 3:00. At approximately 2:50 a Carteret police officer discovered the fire at the Zoo. Louis Tzatzos was found dead in the men's room and Joseph D'Orsi, his clothes ablaze, was discovered approximately 60 feet from the rear of the structure. D'Orsi died later in the hospital. Later that morning an investigation by the Middlesex County Prosecutor's Office revealed that (1) there was a strong odor of gasoline behind the Zoo's bar; (2) the rear door of the tavern was found some distance from the structure; (3) a neighbor had heard a dull explosion, and (4) a juke box in the tavern had been placed in such a way as to limit access through the front door.
There was testimony that at 3:20 defendant phoned Joanne Sandonato and told her to meet him at her father, John Sandonato's house, and that defendant appeared at the Sandonato residence at 4. His lower back and legs were burned and part of his pants were "welded" to his calf. Defendant exclaimed, "Joe's dead. Lou's dead." John Sandonato then drove defendant to Middlesex General Hospital. On the way defendant asked Sandonato to tell hospital personnel *408 that he had burned himself accidentally at a barbecue in the Sandonato backyard. Sandonato refused and defendant entered the hospital alone.
Andrea Dite, a nurse on duty in the hospital emergency room, testified that defendant stated he "was putting his car in the garage. Two men grabbed him, put a bag over him, took him away, burned him with something." Defendant, according to Dite, said that the two unknown assailants left him on Route 1 where a passerby stopped and drove him to the hospital. Defendant was removed to the intensive care unit. Andrea Dite retrieved a switchblade knife from his pants pocket after his clothes had been removed. Thereafter, defendant reiterated his purported assault and kidnapping to New Brunswick police officer James Leffler.
The essential factual defense was articulated by defendant, who testified that after driving D'Orsi home he received a telephone call about 2 from D'Orsi telling him that he wanted to repay a loan. D'Orsi suggested that defendant could collect the money at the Zoo. Defendant asserted that he drove to Carteret, entered the Zoo and saw a bright flash. From that moment on defendant disclaims any recollection of subsequent events. Defendant stated that he found the switchblade knife at the scene of the Royal Oak Restaurant  the situs of another fire which he had been adjusting. Defendant contended that he placed the knife in a brown bag and put it into his raincoat pocket, intending to return it to the owner of the Royal Oak on the following day. In a word, defendant denied involvement in any of the alleged criminal transactions.
Defendant asserts eight points on this appeal. Our review of the voluminous trial record satisfies us that there is no merit to any of the issues raised.

I. The Manslaughter Conviction
Defendant argues that the trial judge erred in submitting the issue of involuntary manslaughter to the jury. *409 He asserts that "involuntary manslaughter  is inapplicable to circumstances in which the victim is a coconspirator who actively contributes to his own demise." In support of this contention defendant draws an analogy to several felony murder cases which have held that a person cannot be tried for the death of his coconspirator. This argument lacks merit. First, there is impressive authority supporting the contrary position. See Commonwealth v. Bolish, 391 Pa. 550, 138 A.2d 447 (Sup. Ct. 1958). Second, in several of the out-of-state authorities upon which defendant relies the limiting statutory language precluded conviction. See, e.g., People v. Wood, 8 N.Y.2d 48, 201 N.Y.S.2d 328, 167 N.E.2d 736 (Ct. App. 1960). On the other hand, our murder statutes, N.J.S.A. 2A:113-1 and 2, are by their terms broad (see State v. Kress, 105 N.J. Super. 514 (Law Div. 1969); State v. McKeiver, 89 N.J. Super. 52 (Law Div. 1965)), and they have been construed to include the homicide of a cofelon. State v. Burton, 130 N.J. Super. 174 (Law Div. 1974). Contra, State v. Suit, 129 N.J. Super. 336 (Law Div. 1974).
In any event, we do not deal here with a murder conviction. The court presented this case to the jury on the ground of involuntary manslaughter. Our Supreme Court has succinctly defined that offense as "an unintentional homicide, committed without excuse or justification, under circumstances not manifesting or implying malice." State v. Bonano, 59 N.J. 515, 523 (1971). The homicide here was neither excusable nor justifiable. Malice was not an issue. There was more than ample credible evidence from which the jury could find defendant guilty beyond a reasonable doubt. Cf., State v. Garner, 238 La. 563, 115 So.2d 855 (Sup. Ct. 1959).

II. The Switchblade Knife
[The court holds that reading the charge in its entirety, the judge properly charged on possession of the knife.]

*410 III. The Expert Testimony

[The court finds that the trial judge did not abuse discretion in permitting the investigator to testify as an expert.]

IV. The False Information Conviction
Defendant was convicted of violating N.J.S.A. 2A:148.22.1, which provides:
Any person who knowingly and willfully gives false information or causes false information to be given to any law enforcement officer or agency with respect to the commission of any crime or purported crime is guilty of a misdemeanor. [Emphasis supplied]
The statute was enacted to deter individuals from giving false information to law enforcement authorities. State v. Hobbs, 90 N.J. Super. 146, 148 (App. Div. 1966). It is clear that such false information has the capacity to cause a waste of investigative resources and to distract and mislead from legitimate and necessary police undertakings. Here defendant reported at least two purported crimes  kidnapping and atrocious assault and battery. The record reflects that the statements at first were taken seriously and were investigated by two New Brunswick police officers and the Metuchen chief of police.
Defendant also contends that he was compelled to tell the hospital personnel the false story in order to receive treatment, and that to convict him under these circumstances violated his Fifth Amendment right to remain silent. This contention is pure sophistry and warrants no discussion. Simply, no one compelled defendant to fabricate a story about criminal events which did not happen. In our view the "kidnapping and assault" scenario was designed to remove defendant from the scene of the Zoo fire.

*411 V. Weight of Evidence

[The verdicts were not against the weight of the evidence.]

VI. The Arson Counts
The trial judge charged the jury that they were to first consider the charge of statutory arson. The judge thereafter instructed the jury that if they found beyond a reasonable doubt that defendant did not commit the crime of arson, they could consider "whether an attempt to commit the crime has been established." When the verdict was announced the clerk asked the foreman  "How did you find as to the second count, arson?" The foreman replied, "Guilty." The jury was polled. No exception to the form of the verdict was made. Defendant contends that the verdict is uncertain and that this court should mould the verdict to guilty of attempted arson.
In State v. Landeros, 32 N.J. Super. 168 (App. Div. 1954), rev'd in part on other grounds 20 N.J. 69 (1955), defendant was charged with assault with intent to rape, atrocious assault and battery and assault and battery. The jury returned a general verdict of guilty. Judge (later Justice) Francis, in upholding the conviction of the greater included offense, stated that if
* * * a general verdict of guilty had been returned without any specification with respect to counts, the verdict would have been valid and sentence could be imposed on the most serious charge * * * so long as there was evidence in the record to support the submission of that issue to the jury for determination. [at 172]
We subscribe to Landeros but need not reach this issue since we are satisfied that on the facts of this case defendant's conviction of arson merged with his conviction of burning a building with intent to defraud an insurance company. The act of arson was not a "distinct criminal affair" but rather it was "an integral part" of the crime of *412 burning with intent to defraud. State v. Hill, 44 N.J. Super. 110, 112 (App. Div. 1957); cf. State v. Jamison, 64 N.J. 363, 380 (1974). Accordingly, we vacate the conviction for arson and sentence imposed as charged in Count II of the indictment.

VII. The Sentences
[Sentences held not excessive or unduly harsh.]
As modified, the judgments under review are affirmed.
NOTES
[1] Defendant was named in eight counts of the indictment. His trial was severed from other defendants whom we alluded to in State v. Sotteriou, 123 N.J. Super. 434 (App. Div. 1973).