1999 OK CR 27

**Garry Royce WILKINS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–98–487.**

Court of Criminal Appeals of Oklahoma.

June 18, 1999.

As Corrected July 1, 1999.

Rehearing Denied July 26, 1999.

Ronnie May, McAlester, OK, for appellant at trial and on appeal.

Mark Edwards, McAlester, OK, for appellant at trial.

Gary James, Okla. City, OK, for appellant at trial and on appeal.

Monte Brown, District Attorney, Max Moss, Jr., Assistant District Attorney, Mcalester, OK, for the State at trial.

W.A. Drew Edmondson, Attorney General of Oklahoma, Katharine J. Hodgins, Assistant Attorney General, Oklahoma City, OK, for the State on appeal.

## OPINION

LUMPKIN, Vice–Presiding Judge:

¶1 Appellant Garry Royce Wilkins was convicted in a non-jury trial of two counts of Child Stealing (21 O.S.1991, § 891), Case No. CF–94–485, in the District Court of Pittsburgh County. The Honorable Jerry Colclazier, District Judge, sentenced Appellant to ten (10) years imprisonment for each count, said sentences to run concurrently, with ten (10) years in each count suspended, two hundred (200) hours of community service, a one hundred dollar ($100.00) victim compensation assessment and court costs. It is from this judgment and sentence that Appellant appeals.

¶2 The facts in this case are not in doubt and were stipulated during the non-jury trial. These stipulated facts show that Appellant was the natural father of J.W. and R.W., who were seven (7) and six (6) years old respectively. During July 1993, Appellant filed for divorce from his wife Scarlet Wilkins Yoast[1], the boys' natural mother, and sought custody of the children. After a temporary custody hearing, Yoast was granted temporary custody. Appellant and Yoast subsequently reconciled, and the divorce petition was dismissed in August 1993.

¶3 In October 1993, Appellant and Yoast once again discussed divorce. On October 25, 1993, at approximately 3:00 a.m., Appellant took the children from their home without informing Yoast. She testified that she awoke that morning to find the television on and the back door open. Appellant and the boys were gone, as well as all of their clothes and one of the couple's cars. Yoast had no knowledge Appellant was going to take the children nor did she have any information as to their whereabouts. Later that day, Yoast filed for divorce.

¶4 Appellant initially took the children to Arrowhead Lodge, north of McAlester, where he rented a room for a few days. For the next three years, Appellant and the children traveled throughout the United States, Germany, Switzerland, England and New Zealand. Yoast was never contacted and told the whereabouts of her children. Appellant finally took the children to Hilo, Hawaii, where he used a false social security number to get a job and enrolled the boys in school under fictitious names. Yoast had no knowledge of her children's whereabouts until they were located in Hawaii in January 1997.

¶5 Appellant's appeal of his conviction under 21 O.S.1991, § 891 presents this Court with a case of first impression. In his first assignment of error, Appellant argues the trial court erred in failing to find that 21 O.S.1991, § 891 was unconstitutional as applied in his case due to its overbreadth, and its vague and ambiguous language. Appellant asserts the statute is overbroad in that it prevents a parent or anyone with legal custody from taking possession of his or her children in almost any event and "makes it impossible to ever do anything with a child unless the other parent is present." (Appellant's brief, pg. 7). He argues the statute is vague in that nowhere in its language does it warn as to what type of conduct will be considered "child stealing". Appellant's pretrial objections to the constitutionality of the statute have preserved the issue for appellate review. *Jetton v. State*, 632 P.2d 432, 435 (Okl.Cr.1981).

¶6 The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court. *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 3360, 73 L.Ed.2d 1113 (1982). The overbreadth doctrine has been employed by the Supreme Court sparingly and only as a last resort. *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute. *Id.*

¶7 Section 891 is not substantially overbroad, and whatever overbreadth may exist can be cured through a case-by-case analysis. *Id.*, 413 U.S. at 615–616, 93 S.Ct. at 2917–2918. A plain, common sense read-

---

1. Scarlet Wilkins had remarried by the time criminal charges were filed against Appellant and is referred to her by her remarried name of Yoast in this appeal.

ing of the statute shows it does not criminalize every activity with a child by one parent to the exclusion of the other parent. It strictly prohibits the malicious, forcible or fraudulent taking of a child with the intent to detain and conceal from the other parent. These are strict limitations which make Appellant's proposed applications of the statute improbable.

¶ 8 These strict limitations also defeat Appellant's "void for vagueness" argument. "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Additionally, this Court has stated that "[i]t is fundamental that statutes creating criminal offenses must be drawn in language sufficient to apprise the public of exactly what conduct is forbidden. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Hayes v. Municipal Court of Oklahoma City*, 487 P.2d 974, 976 (Okl.Cr.1971). *See also State v. Saunders*, 886 P.2d 496, 497 (Ok.Cr.1994).

¶ 9 We have no difficulty in concluding that section 891 gives fair notice of the proscribed activity and is not void for vagueness on its face. The statute specifically refers to "any person", therefore a custodial parent could reasonably understand they would be included under the statute. The statutory language contains no exception for parents or other family members. The statute specifically sets forth the necessary intent required, therefore a person of common intelligence would understand the statute does not prohibit every activity with a child by an individual parent, to the exclusion of the other parent. Accordingly, Appellant's constitutional challenges to the statute fail and this assignment of error is denied.

¶ 10 In his second assignment of error, Appellant argues the Federal Kidnapping Act, 18 U.S.C. § 1201,[2] pre-empts 21

2. Title 18 U.S.C. section 1201, Kidnapping, provides:

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—

(1) the person is willfully transported in interstate or foreign commerce, . . .;

(2) any such act against the person is done within the special maritime and territorial jurisdiction of the United States;

(3) any such act against the person is done within the special aircraft jurisdiction of the United States as defined in section 46501 of title 49;

(4) the person is a foreign official, an internationally protected person, or an official guest as those terms are defined in section 1116(b) of this title; or

(5) the person is among those officers and employees designated in section 1114 of this title and any such act against the person is done while the person is engaged in, or on account of, the performance of official duties; shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

(b) With respect to subsection (a)(1), above, the failure to release the victim within twenty-four hours after he shall have been unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away shall create a rebuttable presumption that such person has been transported to interstate or foreign commerce. . . .

(c) If two or more persons conspire to violate this section and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life.

(d) Whoever attempts to violate subsection (a) shall be punished by imprisonment for not more than twenty years.

(e) If the victim of an offense under subsection (a) is an internationally protected person outside the United States, the United States may exercise jurisdiction over the offense if (1) the victim is a representative, officer, employee, or agent of the United States, (2) an offender is a national of the United States, or (3) an offender is afterwards found in the United States. As used in this subsection, the United States includes all areas under the jurisdiction of the United States including any of the places within the provisions of sections 5 and 7 of this title and section 46501(2) of title 49. For purposes of this subsection, the term "national of the United States" has the meaning prescribed in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22)).

(f) In the course of enforcement of subsection (a)(4) and any other sections prohibiting a con-

O.S.1991, § 891. Article VI Section 2 of the U.S. Constitution establishes the federal constitution and the laws made pursuant to it shall be the supreme law of the land. However, this constitutional provision does not set forth guidelines as to the situations in which federal law will trump state law. The Tenth Amendment to the U.S. Constitution provides "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Therefore, this allegation of error must be read in context of the entirety of the U.S. Constitution.

¶ 11 The Supreme Court has stated that "[c]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981). However, "the question whether a certain state action is pre-empted by federal law is one of congressional intent. 'The purpose of Congress is the ultimate touchstone.'" *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 96, 112 S.Ct. 2374, 2381–2382, 120 L.Ed.2d 73 (1992) *quoting Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985). "To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute." *Id. citing Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990). In *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947), the Court stated:

"Such a purpose [to displace state law] may be evidenced in several ways. The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. Or the state policy may produce a result inconsistent with the objective of the federal statute."(citations omitted).

¶ 12 Appellant argues 21 O.S.1991, § 891 clearly conflicts with the federal statute in that the federal statute considers parents and individuals with legal custody exempt from being defined/charged as a kidnapper. He asserts it can be clearly inferred that the federal statute was created to displace state law in that the federal law narrows who can be defined as a kidnapper, as opposed to

spiracy or attempt to violate subsection (a)(4), the Attorney General may request assistance from any Federal, State, or local agency, including the Army, Navy, and Air Force, any statute, rule, or regulation to the contrary notwithstanding.
(g) Special rule for certain offenses involving children.-
(1) To whom applicable.—If—
(A) the victim of an offense under this section has not attained the age of eighteen years; and
(B) the offender-
(i) has attained such age; and
(ii) is not-
(I) a parent;
(II) a grandparent;
(III) a brother;
(IV) a sister;
(V) an aunt;
(VI) an uncle; or
(VII) an individual having legal custody of the victim; the sentence under this section for such offense shall be subject to paragraph (2) of this subsection.

(2) Guidelines.—The United States Sentencing Commission is directed to amend the existing guidelines for the offense of "kidnapping, abduction, or unlawful restraint," by including the following additional specific offense characteristics: If the victim was intentionally maltreated (i.e., denied either food or medical care) to a life-threatening degree, increase by 4 levels; if the victim was sexually exploited (i.e., abused, used involuntarily for pornographic purposes) increase by 3 levels; if the victim was placed in the care or custody of another person who does not have a legal right to such care or custody of the child either in exchange for money or other consideration, increase by 3 levels; if the defendant allowed the child to be subjected to any of the conduct specified in this section by another person, then increase by 2 levels.
(h) As used in this section, the term "parent" does not include a person whose parental rights with respect to the victim of an offense under this section have been terminated by a final court order.

Section 891 which broadly provides that "anyone" can be charged with kidnapping/child stealing.

¶ 13 Appellant's argument fails as he is in effect comparing "apples and oranges". The federal provision at issue here is kidnapping. The state provision involved is child stealing. Appellant might have an argument as to pre-emption if he was comparing the federal kidnapping statute and the state kidnapping statutes, 21 O.S.1991, §§ 741, 745. But he is not, and his appeal is from a conviction under child stealing, not kidnapping. Further, the language of the federal kidnapping provision and the state child stealing law show the two provisions have very different purposes.

¶ 14 In denying Appellant's motion to quash, Judge Colclazier determined this case could not have been filed under the federal kidnapping statute finding that provision was not relevant. Title 18 U.S.C. § 1201 talks in terms of holding a child for ransom or reward, and such language was intended to exclude kidnapping by a parent because such acts, it was assumed, were not undertaken for remunerative gain. *U.S. v. Sheek*, 990 F.2d 150, 152 (4 th Cir.1993). By enacting Section 891, the Oklahoma Legislature specifically addressed the issue of a parent taking a child with the intent to have custody of the child.

¶ 15 We find the offense stated in Section 891 is distinctly different from both the federal kidnapping provision and the state kidnapping provisions. The purpose of the federal kidnapping provision, and its failure to specifically address the taking of the children by a custodial parent, is not so pervasive as to make reasonable the inference that Congress left no room for this State to address the issue. In addition, the federal kidnapping provision is not so inclusive as to preclude enforcement of state laws on the taking of children by their parents. The two provisions have different purposes and are not inconsistent with each other. Therefore, 21 O.S.1991, § 891 is not pre-empted by 18 U.S.C. § 1201. This assignment of error is denied.

¶ 16 In Appellant's third assignment of error, he argues his actions did not constitute the crime of child stealing as he had lawful custody of his children at the time he took them from their home. Appellant compares his case to *Zaharias v. Gammill*, 844 P.2d 137 (Okl.1992) wherein the Oklahoma Supreme Court stated that a cause of action for abduction or enticement under 76 O.S.1981, § 8 against a parent did not apply where the parent has equal custody rights to the children.

¶ 17 In *Zaharias*, a father sued his wife's parents seeking damages in tort for alleged intentional interference with custodial right to children. The holding in the case pertained strictly to civil liability, not criminal liability, and is therefore not applicable to the case at bar. The only way to determine if Appellant's conduct constituted a crime under Section 891 is to look at the elements of the offense and his conduct.[3]

¶ 18 Title 21 O.S.1991, § 891 provides:

Any person who maliciously, forcibly or fraudulently takes or entices away any child under the age of twelve (12) years, with intent to detain and conceal such child from its parent, guardian or other person having the lawful charge of such child is punishable by imprisonment in the penitentiary not exceeding ten (10) years, or by imprisonment in a county jail not exceeding one (1) year, or by a fine not exceeding Five Hundred Dollars ($500.00), or by both such fine and imprisonment.

The elements of this offense have been set forth as follows:

*First*, maliciously/forcibly/fraudulently;

*Second*, taking away;

*Third*, a child under the age of twelve;

*Fourth*, with the intent to detain;

*Fifth*, and with the intent to conceal;

---

**3.** Appellant's argument goes to the issue of whether he comes within the definition of "any person" whose conduct is prohibited. A review of 21 O.S.1991, §§ 741 and 745 reveals the Legislature utilized the terminology "any person, who without lawful authority ... " to reflect the Legislature's intent to exclude a certain class of persons from the prohibitions of the penal statutes relating to kidnapping. Section 891 does not contain such limiting language.

*Sixth,* from the person having legal custody.

*See* OUJI–CR (2nd) 4–113.

 ¶ 19 Appellant took the children in the middle of the night, without their mother's knowledge or consent. Evidence showed he had planned for some time to take the children, funneling money to secret bank accounts and secretly obtaining passports for the children. Even though he was a custodial parent, Appellant's act of taking the children from their home in the middle of the night without the knowledge or consent of the other custodial parent, also in the home, qualifies as malicious and meets the first element.

¶ 20 The second element is clearly satisfied as Appellant not only took the children out of their home, but ultimately out of the country. The children were 6(six) and 7 (seven) years old at the time, so the third element is met. Fourth, the evidence shows there was no doubt Appellant meant to detain the children as he did not let them return home or have any contact with their mother. Fifth, Appellant admitted his intent to conceal as he moved the children from state to state and country to country, and provided fictitious names for them when he enrolled them in school in Hawaii. Finally, the sixth element is satisfied as the children's mother also had lawful charge of them.

¶ 21 While Appellant had lawful charge of the children as their natural father, under Section 891 he could not deprive the children's mother of her legal rights to the children. By taking the children under the cover of night without her knowledge, he did just that, preventing her from knowing the whereabouts of her children for approximately three (3) years. Appellant's actions clearly fit within Section 891, and the evidence supported the guilty verdict. *Spuehler v. State,* 709 P.2d 202, 203–204 (Okl.Cr.1985). Accordingly, this assignment of error is denied.

## DECISION

¶ 22 The Judgment and Sentence is *AFFIRMED.*

STRUBHAR, P.J.: concur in result.

JOHNSON, J.: concur.

CHAPEL, J.: concur.

LILE, J.: concur.

