2003 OK CR 28

**Kenneth Ray KINCHION, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–2002–601.**

Court of Criminal Appeals of Oklahoma.

Dec. 12, 2003.

682

Robert Ravitz, Public Defender, Jeffrey Contreras, Assistant Public Defender, Oklahoma City, OK, counsel for appellant at trial.

Wesley C. Lane, III, District Attorney, James Siderias, Steve Deutsch, Assistant District Attorneys, Oklahoma City, OK, counsel for the State at trial.

Carolyn L. Merritt, Assistant Public Defender, Oklahoma City, OK, counsel for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, William R. Holmes, Assistant Attorney General, Oklahoma City, OK, counsel for the State on appeal.

### SUMMARY OPINION

LUMPKIN, Judge.

¶ 1 Appellant Kenneth Ray Kinchion was tried by jury and found guilty of Conspiracy

to Commit a Felony, Robbery with a Dangerous Weapon (Counts 1 and 3) (21 O.S.1991, §§ 421 & 801); First Degree Murder (Count 2) (21 O.S.1991, § 701.7); Robbery with a Dangerous Weapon (Count 4) (21 O.S.Supp. 1997, § 801); and Felonious Possession of a Firearm (Counts 5 and 7), Case No. CF–2000–6468, in the District Court of Oklahoma County. The jury recommended as punishment twenty five (25) years imprisonment in each of Counts 1 and 3, life imprisonment in Count 2, fifty (50) years imprisonment in Count 4, and ten (10) years imprisonment in each of Counts 5 and 7. The trial court sentenced accordingly. It is from this judgment and sentence that Appellant appeals.

¶ 2 On November 8, 2000, Appellant also known as Peanut, DeWayne Shirley also known as Pudgy, and Teron Armstrong, also known as T–Noc, members of the Oak Grove Posse, robbed two convenience stores in Oklahoma City. The first armed robbery was committed at Coker's Corner, on South Kentucky Street, at approximately 10:00 a.m. The second armed robbery was attempted shortly after 8:00 p.m. at Tran's Food Mart on South May. Appellant carried the gun in the first robbery. However, in the second robbery, Armstrong carried the gun. After Armstrong threatened the owner of the store, Han Vo, with the gun, Han Vo shot and killed Armstrong with a .38 caliber revolver he kept under the counter.

¶ 3 Appellant raises the following propositions of error in support of his appeal:

I. The statutory offense of Felony Murder does not arise from the shooting death of a co-felon by a robbery victim during a convenience store robbery.

II. The evidence was insufficient to prove the conspiracy allegations beyond a reasonable doubt.

III. Two counts of conspiracy violate the constitutional prohibition against double jeopardy.

IV. There was no evidence that Appellant possessed a firearm at the robbery at Tran's Food Mart.

V. The trial court erred in refusing defense counsel's request for a jury instruction on the exculpatory statement doctrine.

VI. Appellant's sentences on the conspiracy and robbery convictions were improperly enhanced under the Habitual Criminal Statute.

VII. When considered cumulatively, the multiple errors addressed herein denied Appellant due process and fundamental fairness.

¶ 4 At the request of the Court, oral argument was held September 17, 2003. After a thorough consideration of these propositions and the entire record before us on appeal including the original record, transcripts, and briefs of the parties, we have determined that reversal is warranted only as to Count 5, Felonious Possession of a Firearm.

¶ 5 In Proposition I, the issue of the criminal responsibility of a defendant for the death of a co-felon was first addressed by this Court in *State v. Jones,* 859 P.2d 514, 515 (Okl.Cr.1993). This Court found that under 21 O.S.1991, § 701.7(B) a defendant could not be charged with and convicted of felony-murder for the death of a co-felon who was shot by the intended victim of a burglary. Title 21 O.S.1991, § 701.7(B) read as follows:

A person also commits the crime of murder in the first degree when he takes the life of a human being, regardless of malice, in the commission of forcible rape, robbery with a dangerous weapon, kidnapping, escape from lawful custody, first degree burglary, first degree arson, unlawful distributing or dispensing of controlled dangerous substances, or trafficking in illegal drugs.

¶ 6 This Court held that the express language of the felony-murder statute precluded prosecutions where the victim was killed by someone other than the defendant or an accomplice. In 1996, section 701.7(B) was amended and the language broadened to include deaths, which occur at the hands of the intended victim of the underlying felony, police officers, or innocent bystanders. The 1996 amendment provided:

B. A person also commits the crime of murder in the first degree, regardless of malice, when that person or any other

person takes the life of a human being during, or if the death of a human being results from, the commission or attempted commission of murder of another person, shooting or discharge of a firearm or crossbow with intent to kill, intentional discharge of a firearm or other deadly weapon into any dwelling or building as provided in Section 1289.17A of this title, forcible rape, robbery with a dangerous weapon, kidnapping, escape from lawful custody, first degree burglary, first degree arson, unlawful distributing or dispensing of controlled dangerous substances, or trafficking in illegal drugs.

¶ 7 The amended language is consistent with our long-standing interpretation of the felony-murder doctrine. In *Hatch v. State,* 662 P.2d 1377 (Okl.Cr.1983), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986) this Court stated:

> The legislature's definition of murder in 701.7(B) is a reflection of the policy that one who, by his willful criminal conduct, sets in motion a chain of events so perilous to the sanctity of human life that death results therefrom; must bear the ultimate responsibility for his actions. We agree with the legislature that murders effected in such a manner are as abhorrent as those, which are premeditated. Proscribing such actions under our first-degree murder statutes performs the rational function of deterring the commission of felonies so inherently dangerous as to create foreseeable risks of death.

662 P.2d at 1384.

¶ 8 Although the Court was addressing the language of the pre–1996 statute in *Hatch,* the policy expressed remains valid in the 1996 amendment. Indeed, the felony-murder statute, and particularly the 1996 amendment, were designed to apply to just such a situation as we have in the present case. Here, the evidence showed Appellant planned and actively participated in two armed robberies. During the first armed robbery, Appellant carried the weapon. During the second robbery, Appellant acted as the lookout and Armstrong carried the weapon. It can be reasonably inferred from the evidence that Appellant knew Armstrong

was going to carry the loaded gun in the second robbery. Further, it is reasonably foreseeable that threatened with a weapon, the store clerk might shoot at his assailant. While Appellant did not personally carry the loaded gun into the store during the second robbery, his criminal conduct of planning and carrying out the armed robbery, set in motion "a chain of events so perilous to the sanctity of human life" that the likelihood of death resulting was foreseeable. Therefore, Appellant should bear the ultimate responsibility for his actions, which in this case means prosecution for first degree murder.

¶ 9 In his appellate brief and in oral argument before this Court Appellant argued that under the law of imputed intent, the unintended death of his co-felon cannot be imputed to him. The doctrine of imputed intent is a common law principle. The common law has been abrogated by state statute in Oklahoma. *See* 22 O.S.2001, § 9. Further, the very language of 21 O.S.Supp.1996, § 701.7(B) evidences an intent by the Legislature to hold a defendant criminally responsible for the death of a co-felon when that death occurs during a felony so inherently dangerous as to create a foreseeable risk of death. Accordingly, we find the statutory offense of felony-murder applies to the present case and Appellant was properly charged and convicted of first degree felony-murder.

¶ 10 In Proposition II, we find the existence of two conspiracies to commit a robbery was clearly supported by evidence that two separate agreements had been reached between Appellant and his co-conspirators to rob the convenience stores. *See Powell v. State,* 995 P.2d 510, 528 (Okl.Cr.), *cert. denied,* 531 U.S. 935, 121 S.Ct. 321, 148 L.Ed.2d 258 (2000).

¶ 11 In Proposition III, we review only for plain error as no objection on the grounds of double jeopardy was raised at trial. *See Simpson v. State,* 876 P.2d 690, 693 (Okl.Cr.1994). After reviewing the case law, we find that cases addressing the specific issue before us of a double jeopardy challenge to multiple conspiracy convictions provides the most assistance in our resolution of the issue. The sole case from this Court on

the issue is *Jones v. State*, 965 P.2d 385, 386 (Okl.Cr.1998). Applying the law as set forth in Jones, we find the facts of this case distinguish it from the holding in Jones. The evidence in this case, unlike that in Jones, does not suggest one continuous transaction or one agreement to commit several crimes. Evidence that several hours separated the two robberies, the two robberies occurred at different locations and involved different victims, and that the participants in the robberies played different roles from one robbery to the next indicates two separate plans were made for two separate robberies. Accordingly, Appellant's two convictions for conspiracy are not prohibited by the rules of double jeopardy. *See Davis v. State*, 993 P.2d 124, 126 (Okl.Cr.1999). Further, as there were two separate criminal acts, the two convictions do not violate 21 O.S.Supp.1999, § 11.

■ ¶ 12 In Proposition IV, we find the evidence was insufficient to support the conviction in Count V, felonious possession of a weapon at the attempted robbery of Tran's Food Mart. It is undisputed that the single gun carried by the robbers at the second robbery was in the hands of the murder victim, and not in Appellant's hands. The legal theories of constructive possession and vicarious liability do not apply in this situation. In cases addressing constructive possession of guns and illegal drugs, the guns and drugs were found in locations where they were not in any one person's actual possession, *i.e.*, car glove boxes, closets, etc. Therefore, whether or not they belonged to the person found nearest to them was an issue to be determined. In the present case, a gun was unquestionably in Armstrong's hands, not Appellant's hands. Further, unlike illegal drugs, which can be divided and parceled out and therefore possessed jointly, this Court has never found that a gun can be possessed jointly.

¶ 13 Additionally, under the language of 21 O.S.Supp.1999, § 1283, Appellant did not have the firearm in his "immediate control." The State's reliance upon an aiding and abetting theory that because Appellant had been found guilty of participating in the robbery, he was also guilty of being a felon in possession is insufficient to satisfy the elements of the statute. Accordingly, the evidence is insufficient to support a conviction for felonious possession of a firearm in Count 5. That conviction should be reversed with instructions to dismiss.

■ ¶ 14 In Proposition V, we find the trial court did not abuse its discretion in refusing to give a jury instruction on exculpatory statements as Appellant's statement to the police was disproved by other evidence in the case. *See Rogers v. State*, 890 P.2d 959 (Okl.Cr.), *cert. denied*, 516 U.S. 919, 116 S.Ct. 312, 133 L.Ed.2d 215 (1995). Further, Appellant was not prejudiced by the absence of the instruction as the jury was fully instructed on the State's burden of proof, the presumption of innocence, and the voluntariness of the defendant's statement.

■ ¶ 15 Filed by Appellant subsequent to his brief-in-chief is a Motion to Supplement. In this motion, Appellant seeks to supplement the record with a statement from Lieutenant Dexter Nelson. Lt. Nelson was one of the investigating officers in Appellant's case. The motion states that while attending two different police training programs on June 11 and 13, 2003, co-defendant DeWayne Shirley told attendees that Appellant had gone into Tran's Food Mart to use the restroom and had not participated in the attempted robbery. Lt. Nelson contacted the Assistant District Attorney who prosecuted Appellant's case who in turn contacted appellate counsel with this potentially exculpatory evidence.

¶ 16 Appellant now asserts Shirley's statements are not being offered in support of a motion for new trial but to counter the State's appellate argument that the trial court's refusal to the give the exculpatory statement instruction was harmless. Appellant contends that supplementation of the record is necessary to prevent a miscarriage of justice and to preserve the integrity of the judicial process.

¶ 17 The statement of Lt. Nelson is an unnotarized statement containing hearsay. The motion to supplement and its accompanying statement do not fall under the provisions for supplementation of the record as set out in Rule 3.11, *Rules of the Oklahoma*

*Court of Criminal Appeals,* Title 22, Ch.18, App. (2003). The hearsay statements are not necessary to resolve Appellant's challenge to the trial court's refusal to give the jury instruction on exculpatory statements. The information contained in the statement repeats information already presented to this Court in Appellant's brief-in-chief. Accordingly, supplementation of the record is not necessary to this Court's consideration of the issues on appeal. Therefore, the motion to supplement is denied.

■ ¶ 18 In Proposition VI, we find no plain error occurred in the use of the single prior conviction as an element of the offense in Count 5, felon in possession, and to enhance the sentences in Counts 1 and 3, robbery and conspiracy. Use of the single prior conviction in this manner is not prohibited by the Habitual Offender Statute, 21 O.S.1991, § 51.1(B). Further, it is distinguishable from the prohibition to using a prior conviction as an element of an offense and as enhancement of punishment of that same offense. *See Ruth v. State,* 966 P.2d 799 (Okl.Cr.1998), *Chapple v. State,* 866 P.2d 1213 (Okl.Cr.1993).

¶ 19 In Proposition VII, we find Appellant was not denied a fair trial by cumulative error. The only error to warrant relief was found in Proposition IV of Appellant's brief, and we have consequently ordered the conviction in Count 5, felon in possession, to be reversed and dismissed for insufficient evidence. None of the other allegations of error raised warrant any relief. Therefore, as this Court has failed to sustain any of the other errors raised, this cumulative error argument is denied. *See Ashinsky v. State,* 780 P.2d 201, 209 (Okl.Cr.1989). *See also Conover v. State,* 933 P.2d 904, 923 (Okl.Cr. 1997).

1.  *Williams v. State,* 1975 OK CR 171, 542 P.2d 554, 586, *overruled on other grounds by Riggs v. Branch,* 1976 OK CR 216, 554 P.2d 823; *James v. State,* 1981 OK CR 145, 637 P.2d 862, 865, *overruled in part on other grounds, Brown v. State,* 1987 OK CR 181, 743 P.2d 133 (felony murder statute is intended to prevent certain felonies as well as homicide).

2.  *Stiles v. State,* 1992 OK CR 23, 829 P.2d 984, 996; *Brown v. State,* 743 P.2d at 138.

### DECISION

The Judgment and Sentence in **Count 5, Felonious Possession of a Firearm is REVERSED WITH INSTRUCTIONS TO DISMISS.** The Judgments and Sentences on **all remaining counts are AFFIRMED.** Appellant's **Motion to Supplement is DENIED.**

JOHNSON, P.J., concurs in result.

LILE, V.P.J., concurs.

CHAPEL, J., and STRUBHAR, J., dissent.

CHAPEL, J., dissenting:

¶ 1 I disagree with the majority's resolution of Proposition I. I believe our felony murder statute does not apply where a co-defendant is shot and killed by a victim during the course of the crime. Felony murder holds a defendant accountable for murders which are foreseeable as a result of his actions or those of an accomplice. The Legislature enacted the felony murder statute in order "to deter, with the death penalty, those crimes of a particularly heinous and brutal nature as well as those felonies necessarily involving great risk of death or serious bodily injury to the victim."[1] Felony murder is intended to punish those defendants who, with lethal force, commit a felony inherently dangerous to human life.[2] The doctrine's primary function is to remove the State's burden of proving malice by imputing the intent involved in the commission of the felony to the commission of the homicide; however, "there must be a nexus between the underlying felony and the death of the victim."[3]

¶ 2 As the majority notes, "one who, by his willful criminal conduct, sets in motion a chain of events so perilous to the sanctity of

3.  *Wade v. State,* 1978 OK CR 77, 581 P.2d 914, 915. *See also State v. Sophophone,* 270 Kan. 703, 19 P.3d 70, 73 (2001) (purpose of felony murder is to deter defendants from killing negligently or accidentally, and to relieve State of the burden of proving premeditation and malice when victim's death is caused by the killer while he is committing another felony).

human life that death results therefrom; must bear the ultimate responsibility *for his actions.*"[4] Felony murder has an intent element: a felon is liable for the consequences resulting from his intent to commit a particular felony.[5]

¶3 Oklahoma's felony murder statute applies where a defendant or any other person takes the life of another, or if the death of a human being results, during the commission or attempt to commit one of several enumerated felonies, including robbery with a dangerous weapon.[6] The majority states this language shows the Legislature's intent to impute criminal responsibility to a defendant for any death which may occur as a crime is committed. I do not interpret the statute so broadly, nor do I agree that the language unambiguously reflects that intent. On its face, the statute makes a defendant liable for any homicide occurring during the commission of an enumerated crime. The language itself does not automatically include liability for lawful acts committed by third persons. Self-defense is a form of justifiable homicide, i.e. a taking of life as a matter of right.[7] In other words, self-defense, like the defense of property, is not a crime. The majority extends the law of felony murder to include deaths legally caused by third persons.

¶4 Kinchion and his accomplice threatened the store clerk with a gun during the course of an armed robbery. In self-defense, the clerk killed the accomplice. In holding Kinchion liable for the accomplice's death, the majority essentially chooses to interpret felony murder as a law of strict liability holding a criminal defendant responsible for any death that happens at the time the defendant attempts to commit a felony, whether or not the death occurs as a result of the felony, and whether or not the act which caused the death was itself lawful. This Court has not previously adopted this interpretation, before or after the 1996 statutory amendment on which the majority relies. The "proximate cause" theory is directly borrowed from civil law, and disregards the actual cause of any death which happens while the defendant is committing a crime.

¶5 I believe this misinterprets the language of the felony murder statute for two reasons. First, criminal law does not impose strict liability. The criminal justice system focuses on each particular defendant and his personal culpability in a particular crime, taking into account the circumstances of each crime in order to determine appropriate charges and a just punishment.[8] Second, the majority disregards the fact that the accomplice's death was the result of a lawful act. When he shot Kinchion's accomplice, the victim was acting lawfully in self-defense. He could not be charged with murder or any other form of homicide. A person died when Kinchion participated in an armed robbery.

---

4. *Hatch v. State,* 1983 OK CR 47, 662 P.2d 1377, 1384 (emphasis added).

5. *See, e.g., Gilson v. State,* 2000 OK CR 14, 8 P.3d 883, 903, *cert. denied,* 532 U.S. 962, 121 S.Ct. 1496, 149 L.Ed.2d 381 (2001); *Fields v. State,* 1996 OK CR 35, 923 P.2d 624, 634, *cert. denied,* 520 U.S. 1216, 117 S.Ct. 1704, 137 L.Ed.2d 829 (1997); *Powell v. State,* 1995 OK CR 37, 906 P.2d 765, 773–74, *cert. denied,* 517 U.S. 1144, 116 S.Ct. 1438, 134 L.Ed.2d 560 (1996); *Hammon v. State,* 1995 OK CR 33, 898 P.2d 1287, 1308–09; *Freeman v. State,* 1994 OK CR 37, 876 P.2d 283, 287, *cert. denied,* 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503; *Hopkins v. Reeves,* 524 U.S. 88, 99–100, 118 S.Ct. 1895, 1902, 141 L.Ed.2d 76 (1998) (to support a sentence of death, felony murder statute needs no other mens rea requirement than intent to commit the underlying felony).

6. 21 O.S.2001, § 701.7(B).

7. 21 O.S.2001, § 733.

8. For example, a defendant convicted of felony murder who was liable for murder because he intended to commit the underlying felony is only eligible for the death penalty if he is also personally culpable for the murder, i.e. if he killed, tried to kill or intended to kill the victim, intended use deadly force, or was a major participant in a felony and acted with reckless disregard for human life. *Matthews v. State,* 2002 OK CR 16, 45 P.3d 907, 923–24, *cert. denied,* 537 U.S. 1074, 123 S.Ct. 665, 154 L.Ed.2d 570; *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982)(death penalty may be imposed only where defendant intended life be taken or contemplated that lethal force would be used); *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), (requiring a finding that defendant had substantial personal involvement in the underlying felony and exhibited reckless disregard or indifference to the value of human life).

However, under the law, there was no actionable homicide. On its face, the felony murder statute restricts liability for murder to a death resulting from, or occurring during the commission of, an offense. I do not believe the Legislature intended to extend liability for murder to a death that did not result from a crime at all.[9]

¶ 6 The majority's interpretation yields potentially absurd results. For example, if an innocent bystander sees a robbery, is frightened, and dies of a heart attack, the robber should be guilty of felony murder. Since according to the majority opinion, the death need not be a homicide, a defendant should foresee that bystanders might be frightened and, if they have health problems, might die. During oral argument, the State suggested that if a co-defendant kills himself during the commission of a crime, that would not be felony murder as the death would not be the result of the crime. At least one jurisdiction adopting the proximate cause theory has held that this situation does constitute felony murder, as no independent force intervened between the crime and the death.[10]

¶ 7 Finally, I believe this broad extension of the felony murder doctrine poses constitutional problems. Due process requires that a defendant know what constitutes a crime. This Court has often stated, "It is fundamental that statutes creating criminal offenses must be drawn in language sufficient to apprise the public of exactly what conduct is forbidden." [11] .I do not believe a felon can be expected to understand that he will be guilty of murder if, while he commits a crime, someone else's lawful act causes a death. I dissent.

9. Interpreting a similar felony murder statute, the Kansas Supreme Court has recently come to the same conclusion. *State v. Sophophone,* 270 Kan. 703, 19 P.3d 70, 73 (2001); *State v. Murphy,* 270 Kan. 804, 19 P.3d 80 (2001).

10. *Howard v. State,* 545 So.2d 352 (Fla. 1st DCA 1989), review denied, 553 So.2d 1165 (Fla.1989) (co-defendant died after swallowing cocaine during arrest). Other jurisdictions hold that a co-defendant's death while setting an arson fire creates liability for felony murder. *In Re Leon,* 122 R.I. 548, 410 A.2d 121 (1980); *State v. Sotteriou,* 132 N.J.Super. 403, 334 A.2d 47 (1975), *cert. denied,* 70 N.J. 144, 358 A.2d 191 (1976); *State v. Morran,* 131 Mont. 17, 306 P.2d

¶ 8 I am authorized to state that Judge Strubhar joins in this dissent.

679 (1957); *Commonwealth v. Bolish,* 381 Pa. 500, 113 A.2d 464 (1955), overruled on other grounds by *Commonwealth ex rel. Shadd v. Myers,* 223 A.2d 296 (Pa.1966).

11. *See, e.g., Gilson,* 8 P.3d at 913; *Wilkins v. State,* 1999 OK CR 27, 985 P.2d 184, 186, *cert. denied,* 528 U.S. 1086, 120 S.Ct. 813, 145 L.Ed.2d 685 (2000); *Hayes v. Municipal Court of Oklahoma City,* 1971 OK CR 274, 487 P.2d 974, 976. See also *Malicoat v. State,* 2000 OK CR 1, 992 P.2d 383, 396, *cert. denied,* 531 U.S. 888, 121 S.Ct. 208, 148 L.Ed.2d 146 (2000) (statute must be sufficiently clear and explicit for the understanding of ordinary persons).