2005 OK CR 4

**Christopher Michael DICKENS,
Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. F 2003–544.

Court of Criminal Appeals of Oklahoma.

Feb. 4, 2005.

Julia Allen, Assistant Public Defender, Tulsa, OK, attorney for defendant at trial.

Julie Doss, Mickey Hawkins, Assistant District Attorneys, Tulsa, OK, Attorneys for State at trial.

Stuart Southerland, Assistant Public Defender, Tulsa, OK, attorney for appellant on appeal.

W.A. Drew Edmondson, Oklahoma Attorney General, William R. Holmes, Assistant Attorney General, Oklahoma City, OK, Attorneys for appellee on appeal.

### OPINION

LILE, Judge.

¶ 1 Appellant, Christopher Michael Dickens, was convicted after jury trial of, count one, Robbery with a Firearm in violation of 21 O.S.2001, § 801, and count two, First Degree (felony) Murder in violation of 21 O.S. 2001, § 701.7(B), in Tulsa County District Court Case No. CF–2002–4981 before the Honorable Thomas C. Gillert, District Judge. The jury set punishment at fifteen (15) years imprisonment on count one and life imprisonment on count two. The trial court dismissed the robbery count and sentenced Appellant to life imprisonment on count two. Appellant has perfected his appeal to this Court.

¶ 2 On the evening of September 25, 2002, Appellant and two others robbed a McDonald's restaurant in Tulsa, Oklahoma. One accomplice, Charles Turner, used a firearm during the robbery. The police were alerted as the robbery was in progress. An officer arrived and waited for the robbers to exit.

¶ 3 Turner and Appellant left the store and ran to an open field. One of the officers released his K–9 and ordered the two to stop, but they continued to run. As the K–9 closed in on the pair, Turner fired shots from his weapon. Officers returned fire, striking and killing Turner. As the shooting began, Appellant dropped to the ground, and he was apprehended after the shooting.

¶ 4 Appellant raises the following propositions of error in support of his appeal:

1. Since Appellant had surrendered prior to the shooting death of his accomplice, there was insufficient evidence with which to convict Appellant of First Degree Murder.

2. Prosecuting Appellant for First Degree Murder serves no legitimate government interest. 21 O.S.2001, § 701.7(B) should be interpreted to exclude the lawful death of an accomplice at the hands of a third party as a factual support for the felony-murder prosecution of a co-defendant.

3. It is a violation of the Eighth and Fourteenth Amendments to the United States Constitution to hold Appellant strictly liable for First Degree Murder.

4. The jury instruction presented to the jury which defined the elements of First Degree Felony Murder do not accurately state Oklahoma law, requiring reversal of Appellant's conviction.

5. It was reversible error for the trial court to deny Appellant's requested instructions.

6. The prosecutor's improper use of hypotheticals during voir dire served to deprive Appellant of his constitutional right to an impartial jury and due process of law.

¶ 5 After thorough consideration of the entire record before us on appeal, we have determined that Appellant's conviction should be **AFFIRMED.**

■ ¶ 6 Concerning proposition one, we find that the facts support the conviction. Title 21 O.S.2001, § 701.7(B) provides that:

"A person ... commits the crime of murder in the first degree, regardless of malice, when that person or any other person takes the life of a human being during, or if the death of a human being results from, the commission or attempted commission of ... robbery with a dangerous weapon...."

¶ 7 This proposition challenges whether under the facts, Appellant was still sufficiently involved in the armed robbery at the time of the death to be punishable under the language of the statute. He was escaping, and escape is part of the robbery. That he fell to the ground when the shooting started does not constitute withdrawal. *Clark v. State*, 1977 OK CR 4, 558 P.2d 674; *Spuehler v. State*, 1985 OK CR 132, 709 P.2d 202.

¶ 8 Concerning propositions two and three, we note the statute set forth above provides that first degree murder occurs "when that person or any other person takes the life of a human being" in the commission of enumerated felonies. 21 O.S.2001, § 701.7(B). This clear, unambiguous language subjects Appellant to prosecution and conviction under our felony murder statute. That a police officer killed a codefendant does not relieve Appellant of responsibility for the death. *Id.*

¶ 9 We find, regarding proposition four, that Appellant failed to object to the instructions of the trial court; therefore, we review for plain error only. *Smith v. State,* 1996 OK CR 50, 932 P.2d 521, 532. There was no plain error here. The instruction properly followed 21 O.S.2001, § 701.7(B). In proposition five, we find that instructions regarding an intervening cause were not warranted by the facts of this case. *Kinchion v. State,* 2003 OK CR 28, 81 P.3d 681, 684.

¶ 10 Regarding proposition six, we find that Appellant failed to make a contemporaneous objection to many of the questions during voir dire; therefore, we review for plain error only. Where objections were made, the trial court sustained the objection, but no admonition was requested; therefore, again, we review for plain error only. *Patton v. State,* 1998 OK CR 66, 973 P.2d 270, 302. There was no plain error here.

### DECISION

¶ 11 The Judgment and Sentence of the trial court is **AFFIRMED.**

LUMPKIN, V.P.J.: specially concurs.

JOHNSON, J.: concurs in results.

CHAPEL, P.J.: dissents.

CHAPEL, J., Dissenting.

¶ 1 I disagree once again with the majority's continued expansion of the felony-murder doctrine. Whether or not Dickens had surrendered before police killed his partner in crime, as he claims, or merely almost surrendered, as the majority concludes, is not the question. In previous decisions, this Court has turned on its head the principle that a felony murder conviction requires a nexus between the underlying felony and the death of the victim.[1] As I have previously stated, I do not believe the plain language of our amended felony murder statute creates liability for murder where a third person commits a lawful act resulting in a death.[2] I continue to believe the law of felony murder requires that a death must be both unlawful and foreseeable as the result of a defendant's conduct.[3] Any decision otherwise, in addition to contravening the plain language of the statute and the rule of law, poses constitutional due process problems.[4] Here, a police officer lawfully shot and killed Dickens's fleeing co-defendant, who was himself shooting at a police dog. No murder was committed. This is yet another case where a death has occurred and nobody is liable for murder.[5] I dissent.

LUMPKIN, JUDGE: Special Concur.

¶ 1 "**Legislatures,** not courts, prescribe the scope of punishment." *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983) (*emphasis added*).

¶ 2 The fundamental rule of statutory interpretation is to ascertain the intention of the Legislature to assure that their intention is followed. *Ex parte Higgs,* 97 Okla.Crim. 338, 263 P.2d 752, 756 (1953). "Under such

---

1. *Malaske v. State,* 2004 OK CR 18, 89 P.3d 1116, 1118; *Kinchion v. State,* 2003 OK CR 28, 81 P.3d 681, 684.

2. *Kinchion,* 81 P.3d at 688 (Chapel, J., dissenting).

3. *Malaske,* 89 P.3d at 1121 n. 10 (Chapel, J., dissenting).

4. *Kinchion,* 81 P.3d at 688 (Chapel, J., dissenting) (due process requires a statute to tell the public exactly what conduct is forbidden, and "I do not believe a felon can be expected to understand that he will be guilty of murder if, while he commits a crime, someone else's lawful act causes a death.")

5. *Malaske,* 89 P.3d at 1123(Chapel, J., dissenting).

conditions as are herewith presented all courts recognize the principle of resort to rules of construction in arriving at legislative intent." *Id.* When reviewing a criminal statute, the interpretation should not go further than the plain language, nor should it be construed so narrowly as to defeat the intent. *U.S. v. Braverman,* 373 U.S. 405, 408, 83 S.Ct. 1370, 1372, 10 L.Ed.2d 444 (1963).

¶ 3 As we noted in *Kinchion v. State,* 2003 OK CR 28, ¶ 5, 81 P.3d 681, 683 (Okl.Cr. 2003), prior to 1996, 21 O.S.2001, § 701.7(B) read, in pertinent part:

> A person also commits the crime of murder in the first degree when **he** takes the life of a human being, regardless of malice, in the commission of ... robbery with a dangerous weapon. (emphasis added)

During the 1996 session, the Legislature responded to a prior decision of this court[1] and amended § 701.7(B) to read, in pertinent part:

> A person also commits the crime of murder in the first degree, regardless of malice, when that person **or any other person** takes the life of a human being during, **or if the death of a human being results from,** the commission or attempted commission of ... robbery with a dangerous weapon. (*emphasis added*)

*Id.* at ¶ 5, 81 P.3d @ 684.

¶ 4 When reviewing the plain language of this statute as amended, the intent is absolutely clear on its face: in 1996 the Legislature wanted to bolster § 701.7(B) to include **any** murder that occurs as a result of an enumerated felony. In other words, it appears the Legislature recognized the grave danger these type of acts created for all persons involved and wanted to hold those who created the danger accountable.

¶ 5 Despite the shrinking of the felony murder rule in many jurisdictions,[2] and the expansion of Lord Coke's original design of felony murder,[3] the Legislature in Oklahoma has found it necessary to enlarge the reach of § 701.7(B). Because the Legislature holds the providence to dictate the law of Oklahoma, this Court must honor that Constitutional mandate and uphold the concept of separation of powers.

¶ 6 It is a natural part of our humanity to desire to find some equitable vehicle to assist this defendant who attempted a late withdrawal from the event that caused the death of his co-defendant. However, this is a court of law, not a court of equity.[4] In seeking legal theories upon which to analyze the facts of this case we find the Legislature has forestalled their application.

¶ 7 The strongest alternative theory available, that the Appellant attempted to abandon[5] either a conspiracy to commit or the commission of the robbery, fails on the fact he had already committed the robbery with his co-defendant. He was thus well within the legislative mandate of § 701.7(B), which makes him liable "or if the death of a human being results from ... robbery with a dangerous weapon". Based on the language of the statute and a correct reading of *Kinchion,* this Court has no alternative but to deny relief to the Appellant. Even if an application of the legal rules of the law of abandonment were to be applied in this situation, the attempt to abandon came too late. The inherently dangerous action had already been put into motion. It is the very results of that conduct the amended statute sought to punish.

¶ 8 Appellant was properly charged and convicted of first-degree felony-murder in the manner that the Legislature intended. Courts do not adjudicate based on feelings.

---

1. *State v. Jones,* 1993 OK CR 36, 859 P.2d 514 (Okl.Cr.1993).

2. *See* CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW, § 147 (15th ed.1993). *See also* WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW, § 14.4 (2d ed.2003). *E.g. Kansas v. Sophophone,* 270 Kan. 703, 19 P.3d 70 (2001).

3. Lord Coke's 1644 statement of felony murder is commonly accepted as the beginnings of felony

murder, "that a death caused by any *unlawful* act is murder." *See* WAYNE R. LAFAVE, *supra.*

4. *See Hain v. State,* 1993 OK CR 22, 852 P.2d 744, 753–754 (Lumpkin, P.J., Concurring in Part/Dissenting in Part).

5. *See Perkins on Criminal Law,* 2d. Ed.(1969), Pg. 588–590.

Judges may not simply wake up in the morning and decide that they plan to let a criminal or two off because they feel like it. We apply legal principles in deciding cases, and there has been no change in these principles. Chief Justice Mara D. Corrigan recently wrote of the challenge of appellate courts committing to a "textualist approach to judicial interpretation".[6] As she relates " 'textualism' is a reviled word in many circles." Chief Justice Corrigan goes further to identify the need for judges to guard against their humanity as is exemplified by the actions of "philosopher-kings" flowing from Plato's *Republic,* his treatise on the ideal state. As she notes "the people were to take their orders from enlightened philosopher-kings, who would give their followers constant and detailed direction".[7] When applying "textualism" appellate courts are bound by the plain, objective meaning of the text of the statute. That approach provides consistency, ensures discipline for appellate judges, and upholds the Rule of Law. Chief Justice Corrigan expresses it well,

> This is my concern with the critics of textualism: an activist approach rests on an anti-democratic premise that judges just know better—that we are somehow smarter and wiser than the people we govern and serve—that we on the bench are the new philosopher-kings. The constant temptation in judging is to be expedient, to reach out and fix what appears to be wrong.[8]

¶ 9 We must respect the authority and prerogatives of the Oklahoma Legislature, regardless of whether we agree with their actions. The amendment to Section 701.7(B) is constitutional. Its scope is a question of public policy not within the jurisdiction of this Court. Our role is to give effect to the plain meaning of the constitutional language enacted by the Legislature, and provide certainty in the application of that law. As Chief Justice Corrigan makes succinctly clear, "the meaning of the law is simply more certain when judges faithfully apply a disciplined interpretative approach. Non-textual modes of interpretation leave lower courts, attorneys and the long-suffering public in a morass of uncertainty."[9] We should be dedicated to making the law clear and certain and applying it in a consistent manner. This opinion seeks to do just that, apply the plain, clear language of the statute as enacted by the representatives of the people, the Oklahoma Legislature. If a different application is desired, the Legislature has the authority to effect that change through the legislative process.

JOHNSON, J.: Concur in Results.

¶ 1 This case is not totally unusual. The facts are in dispute and the jury had to decide who to believe. The facts show Appellant did not have a firearm at the time of the robbery, and Appellant, along with others, ran from the scene of the robbery. There is a conflicting evidence relating to when Appellant fell to the ground and surrendered.

¶ 2 Obviously, parties involved in an armed holdup take a great deal of responsibility, even one for the other. One should know that guns could be fired and someone could be hurt or killed. I would not affirm a murder conviction for one who did not have a weapon and surrendered at the first request to do so, if another party was killed by a law officer because that party did not surrender. If a party clearly breaks off his involvement in the armed robbery, he should not at that point be subjected to charges for what happens to the other parties thereafter.

¶ 3 I therefore concur in result because there is evidence that Appellant did not surrender early in the chase. He likely surrendered because of the K–9 dogs, rather than halting when ordered to do so.

---

6. *See Maura D. Corrigan, Textualism in Action: Judicial Restraint on the Michigan Supreme Court, Vol. 8, No. 2 Texas Review of Law & Politics,* 261 (2004).

7. *Id.*

8. *Id.* at 262.

9. *Id.* at 263–264.