SIMMS v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:SIMMS v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 SIMMS v. STATE
2021 OK CR 35
Case Number: F-2018-1283
Decided: 10/21/2021
JAMAR MORDECAI SIMMS, Appellant v. STATE OF OKLAHOMA, Appellee
Cite as: 2021 OK CR 35, __ __

 

SUMMARY OPINION
HUDSON, VICE PRESIDING JUDGE:
¶1 Appellant, Jamar Mordecai Simms, was tried and convicted by a jury in Oklahoma County District Court, Case No. CF--2016--7415, of two counts of First Degree Felony Murder, in violation of 21 O.S.Supp.2012, § 701.7(B). The jury recommended a sentence of life imprisonment for each count. The Honorable Ray C. Elliott, District Judge, presided at trial. Judge Elliott sentenced Simms in accordance with the jury's verdicts and ran the sentences consecutively. Simms must serve 85% of his sentences before he is parole eligible. 21 O.S.Supp.2015, § 13.1(1).
¶2 Simms now appeals, alleging six propositions of error on appeal:
I. THE STATE'S EVIDENCE WAS INSUFFICIENT TO PROVE SIMMS' GUILT BEYOND A REASONABLE DOUBT, MAKING THE EVIDENCE INSUFFICIENT TO SUPPORT A CONVICTION;
II. THE ADMISSION OF CELL PHONE ANALYSIS EVIDENCE BASED ON HISTORIC CELL TOWER RECORDS OBTAINED WITHOUT A SEARCH WARRANT VIOLATED SIMMS' FOURTH AMENDMENT RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES AS CONSTRUED BY CARPENTER V. UNITED STATES;
III. IMPROPER ADMISSION OF HEARSAY TESTIMONY AS EXCITED UTTERANCE VIOLATED SIMMS' RIGHT TO CONFRONT WITNESSES IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ART. 2, § 20 OF THE OKLAHOMA CONSTITUTION;
IV. SIMMS' RIGHT TO DUE PROCESS WAS VIOLATED BY THE FALSE TESTIMONY OF THE STATE'S INCENTIVIZED WITNESS DEVIN HINES AND BY THE FAILURE OF THE PROSECUTORS TO CORRECT THAT TESTIMONY IN VIOLATION OF THE DUE PROCESS CLAUSES OF THE FEDERAL AND STATE CONSTITUTIONS;
V. THE IMPROPER ADMISSION OF UNDULY GRUESOME PHOTOGRAPHS, THAT DID NOT REFLECT [SIMMS'] ACTS, VIOLATED SIMMS' FUNDAMENTAL RIGHT TO A FAIR TRIAL; and
VI. TRIAL ERRORS, WHEN CONSIDERED IN A CUMULATIVE FASHION, WARRANT A NEW TRIAL.
¶3 After thorough consideration of the entire record before us on appeal, including the original record, transcripts, exhibits and the parties' briefs, we find Simms' Proposition One claim has merit, which for reasons set forth below mandates that his convictions be REVERSED and the case REMANDED FOR NEW TRIAL.
¶4 Simms' first degree felony-murder charges were predicated on alternative factual theories. The State alleged the murders occurred either while Simms was in the commission of distribution of a controlled dangerous substance (marijuana) or while in the commission of robbery with a dangerous weapon. In the end, the jury's guilty verdicts were based on the jury's finding that the murders occurred while Simms was in the commission of distributing marijuana. The verdict forms reveal that the jury made no findings as to the State's alternative robbery with a dangerous weapon theory.
¶5 In Proposition One, Simms contends the evidence shows he was a buyer, not a distributor of the marijuana. As purely a buyer, Simms argues he cannot be held liable as a principal to the underlying felony of drug distribution. He thus complains the State's evidence was insufficient to support his felony-murder convictions. Simms' claim presents a novel issue, namely, whether a buyer can be held liable as a principal to the distributor's crime of distribution. We address this issue below for the first time in a published decision.
[1] To resolve the issue we employ the sound legal guidance and logic utilized by numerous other jurisdictions when addressing this same question. We ultimately find the State erred when it charged Simms based on a legally flawed presupposition that Simms, as a buyer, could be charged with the crime of distribution and thus could be held liable for first degree felony-murder with this predicate crime.
¶6 As do many states, Oklahoma law distinguishes between a buyer and seller,
[2] punishing the seller/distributor more severely. See 63 O.S.Supp.2015, § 2-101(10), (11) and (12) (defining the terms "deliver," "delivery," "dispense" and "distribute"); 63 O.S.Supp.2012, § 2-402 (possession of a controlled dangerous substance); 63 O.S.Supp.2012, § 2-401 (distribution of a controlled dangerous substance). The buyer-seller distinction is rudimentary to all sales transactions. The buyer's objective being to buy/receive; the seller's objective being to sell/distribute. Thus, each serves a different and distinct role in the transaction. As the Supreme Court explained in Abuelhawa v. United States:[3] 
 
Where a transaction like a sale necessarily presupposes two parties with specific roles, it would be odd to speak of one party as facilitating the conduct of the other. A buyer does not just make a sale easier; he makes the sale possible. No buyer, no sale; the buyer's part is already implied by the term "sale," and the word "facilitate" adds nothing. We would not say that the borrower facilitates the bank loan.
556 U.S. 816, 820 (2009). To further illustrate this point, when a consumer "go[es] to the store to buy groceries for themselves, we would not say their purpose in doing so is to help the grocers make the sales." Simms v. United States, 244 A.3d 213, 221 n.24. (D.C. 2021).
¶7 A buyer and seller act from opposite poles of a typical sales transaction. See Wheeler v. State, 691 P.2d 599, 602 (Wyo. 1984). Even though it can be said that both intend the sale to be made, this fact alone cannot be taken to mean the buyer as a matter of law is an accomplice of the seller. See Simms, 244 A.3d at 220-21.
[4] "An accomplice is one who participates in the same criminal conduct as the defendant, not one whose conduct is the antithesis of the defendant, albeit the conduct of both is involved in a single transaction." Wheeler, 691 P.2d at 602. Thus, while the separate acts of a buyer and seller may result in a single transaction, in the classic buyer-seller drug transaction "the buyer is not aiding the 'selling act' of the seller and the seller is not aiding the 'buying act' of the buyer." Id. Without evidence of something more than just receipt, the buyer/receiver of the controlled substances commits the crime of "possession" and not "distribution," and thus cannot be charged as a principal to the distributor's crime of distribution. Brown v. State, 1954 OK CR 17, ¶ 17, 266 P.2d 988, 991-92 (purchaser of bootleg liquor is not an accomplice of the seller); Jefferson v. State, 1926 OK CR 78, 34 Okl.Cr. 56, 57-58, 244 P. 460, 460-61 (purchaser of narcotics is not an accomplice of the seller; seller and buyer are independent criminals). To hold otherwise would frustrate Oklahoma's statutory scheme distinguishing between the acquisition or possession of drugs and the illegal transfer of drugs.[5] 
 
¶8 The dissenters tell us that the status of a buyer/receiver as a principal to the seller/distributor is immaterial to this case. Lewis at ¶ 2. Wholly disregarding a fundamental precept and tenant of the felony-murder doctrine--i.e., that felony-murder is committed when a death results from a defendant's commission of certain enumerated felonies
[6]--the dissenters focus solely on the "nexus" between the drug deal and the victim's death. With this hyper-truncated view of the felony-murder doctrine and liberal interpretation of 21 O.S.Supp.2012, § 701.7(B), the dissenters contend "[l]iability rests not on whether a buyer/recipient aids or abets a seller/distributor, but upon the buyer/recipient's own life-threatening or life-destroying conduct under 'the facts and circumstances surrounding both the felony and the homicide.'" Lewis at ¶ 7 (quoting Wade v. State, 1978 OK CR 77, ¶ 4, 581 P.2d 914, 916). Notably, both dissents support this skewed view using deftly mined language from multiple felony-murder cases whilst omitting that the crucial and foundational component--that the defendant be a principal to the underlying predicate crime--is satisfied in each of the cited cases.[7] The dissenters' unprecedented reading of Section 701.7(B) represents a seismic shift in the felony-murder doctrine which risks dangerous results and unintended consequences. The taking of such risk is unwise and unreasoned. We adhere to the bedrock principle that "one is liable for felony murder only where they could also be charged with the underlying predicate crime." Daniel v. State, No. C-2019-15, slip op. at 2 (Okl.Cr., June 25, 2020) (Rowland, J. Concurring in Results).
¶9 The record in this case shows that Simms, accompanied by an unidentified male confederate, was meeting with the victims to purportedly buy marijuana when the murders occurred. This was a classic drug transaction involving buyers and sellers each having specific objectives/roles in the transaction. Simms' objective being the unlawful acquisition of marijuana; the victims' objective being the unlawful sale/delivery of marijuana. Under these facts, Simms could not be charged with distribution.
[8] We reject the State's legally flawed and invalid argument (made both here and below) that Simms, by seeking drugs, caused the distribution and is thus criminally liable as a principal to the underlying felony of drug distribution. Simms' felony-murder convictions based on the underlying predicate crime of distribution must therefore be REVERSED.
¶10 We must next determine whether Simms may be retried on the State's alternative robbery with a dangerous weapon theory for which the jury was silent, or if retrial is barred by the Double Jeopardy Clause. U.S. Const. Amend. V, XIV. The dispositive issue here is whether Simms' original jeopardy for the State's alternative robbery with a dangerous weapon theory has terminated and thus bars retrial. See Richardson v. United States, 468 U.S. 317, 325 (1984); United States v. Feldman, 931 F.3d 1245, 1254 (11th Cir. 2019), cert. denied, ___U.S.___, 140 S. Ct. 2658 (2020). As explained below, we find Simms' original jeopardy in this case has yet to terminate on the alternative felony-murder theory.
¶11 This is not a case where it can be assumed the jury impliedly acquitted Simms of the felony-murder theory based on robbery with a dangerous weapon. In Green v. United States, 355 U.S. 184 (1957), the Court held that such an assumption could be made where the jury in a first degree murder case convicted on the lesser included offense of second degree murder without explicitly noting acquittal on the greater charge. Id. at 190-91. Here, Simms was charged with two alternative means of committing a single crime--first degree felony-murder. We decline to infer partial acquittal under these circumstances. Feldman, 931 F.3d at 1256, 1257 (holding that the "implied acquittal" reasoning is not satisfied unless the conviction of one crime logically excludes guilt of another crime; "if a defendant's conviction for one offense is equally consistent with both guilt and innocence of another [crime], then it cannot accurately be said to 'imply' anything.").
¶12 In the present case, Simms' jury was wholly silent with respect to the State's robbery with a dangerous weapon theory. The verdict form for each murder count separately listed the State's two alternative felony-murder theories and, for each theory, gave the jury two options--guilty and not guilty. On both verdict forms, the jury solely checked the guilty option for the State's distribution theory and left the guilty/not guilty options for the alternative robbery with a dangerous weapon theory blank. Given these circumstances, the jury's election of the State's distribution theory cannot be said to "imply" anything and does not equate to an implied acquittal on the State's alternative robbery with a dangerous weapon theory. The jury's silence in this regard speaks volumes. There has been no acquittal of Simms with respect to this theory.
¶13 Moreover, Simms expressly declined the opportunity to view the verdict forms before the jury was dismissed. Simms impliedly consented to the dismissal of the jury without requiring a finding by the jury on the alternative felony-murder theory of robbery with a dangerous weapon and thus jeopardy has not attached. Cf. Green, 355 U.S. at 191. See Feldman, 931 F.3d at 1256-57 (a defendant's consent need not be express but may be implied from the circumstances).
¶14 For these reasons, we find Simms' original jeopardy for both counts of first degree felony-murder while in the commission of robbery with a dangerous weapon has not terminated, and we REMAND the case to the District Court for a NEW TRIAL on this theory.
¶15 Simms' remaining propositions of error are rendered moot by this holding.
DECISION
¶16 The Judgment and Sentence of the district court is REVERSED AND REMANDED FOR A NEW TRIAL. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2021), the MANDATE is ORDERED issued upon delivery and filing of this decision.
AN APPEAL FROM
THE DISTRICT COURT OF OKLAHOMA COUNTY
THE HONORABLE RAY C. ELLIOTT, DISTRICT JUDGE





APPEARANCES AT TRIAL
MELANIE FREEMAN-JOHNSON
KATIE SAMPLES
ASST. PUBLIC DEFENDERS
320 ROBERT S. KERR AVE.,
SUITE 611
OKLAHOMA CITY, OK 73102
COUNSEL FOR DEFENDANT
ADAM KALLSNICK
KELLY COLLINS
ASST. DISTRICT ATTORNEYS
320 ROBERT S. KERR AVE.,
SUITE 505
OKLAHOMA CITY, OK 73102
COUNSEL FOR THE STATE

APPEARANCES ON APPEAL
ANDREA DIGILIO MILLER
ATTORNEY AT LAW
800 N. HARVEY, SUITE 317
OKLAHOMA CITY, OK 73102
COUNSEL FOR APPELLANT
MIKE HUNTER
ATTORNEY GENERAL
WILLIAM HOLMES
THEODORE M. PEEPER
ASST. ATTORNEY GENERAL
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 73105
COUNSEL FOR APPELLEE
 
OPINION BY: HUDSON, V.P.J.
LUMPKIN, J.: DISSENT
LEWIS, J.: DISSENT
KANE, V.C.J.:
[9] CONCUR
WINCHESTER, J.:[10] CONCUR
FOOTNOTES
[1] See Daniel v. State, No. C-2019-15, slip op. 11-12 (Okl.Cr., June 25, 2020) (recognizing under Oklahoma law and the facts presented that Daniel, the drug buyer, was not an accomplice of the seller/distributor).
[2] We recognize that payment is not essential to a crime of drug distribution, see Dyle v. State, 1983 OK CR 72, ¶ 9, 664 P.2d 1047, 1050, and thus the drug recipient may be a buyer or simply a receiver. For ease of reference, we use the term "buyer" to denote a buyer/receiver and the term "seller" to signify a seller/distributor.
[3] 556 U.S. 816 (2009) (holding that purchaser of drugs, guilty only of a misdemeanor for such conduct, could not be convicted of a felony on the premise that his purchases facilitated or aided and abetted the sales).
[4] See also 21 O.S.2011, § 172 (to be convicted as a principal to a crime, the evidence must show the defendant directly committed each element of the offense, or that he aided and abetted another in its commission); United States v. Moore, 212 F.3d 441, 447 (8th Cir. 2000) ("[A] purchase, standing alone, [is not] demonstrative of the buyer's aiding or abetting the seller in the distribution of the remainder of the seller's inventory."); United States v. Harold, 531 F.2d 704, 705 (5th Cir.1976) ("[T]o participate actively in the distribution [of a controlled substance] to others one must do more than receive it as a user."); State v. Celestine, 671 So.2d 896, 896--97 (La. 1996) ("[W]hen a purchaser takes delivery of the narcotics transferred into his possession by the distributor he has committed a possessory offense only); State v. Morris, 896 P.2d 81, 85 (Wash. Ct. App. 1995) (purchaser of drugs is not an accomplice of the seller); Sweatt v. State, 473 S.W.2d 913, 915 (Ark. 1971) ("It is uniformly held that one who buys narcotics, intoxicating liquor, or other contraband is not an accomplice in the sale of the article, for obviously he is not selling to himself.").
[5] See Hyche v. State, 934 N.E.2d 1176, 1180 (Ind. Ct. App. 2010) ("To find that [defendant's] offer to purchase the drug somehow amount[ed] to organizing, financing, or even inducing its delivery, defies logic and [does not] reasonably reflect the intent of the [Legislature.]") (evidence was insufficient to prove defendant, a purchaser of ecstasy, guilty of felony-murder based on the underlying crime of dealing); State v. Pinson, 895 P.2d 274, 277 (N.M. Ct. App. 1995) ("In the absence of clear legislative directive, the buyer's conduct is therefore of a kind that is necessarily incidental to the principal crime--trafficking or sale--and the buyer has been excluded from prosecution for solicitation by legislative choice." (internal quotations omitted)); Tyler v. State, 587 So.2d 1238, 1242 (Ala. App. 1991) ("[T]he purchaser of an illicit substance is not an accomplice of the seller because the purchaser is guilty of an offense independent from the sale.").
[6] See Gilson v. State, 2000 OK CR 14, ¶ 40, 8 P.3d 883, 903 ("felony-murder is committed when a death results from a defendant's commission of any of several specifically listed underlying felonies." (emphasis added)); Wade v. State, 1978 OK CR 77, ¶ 3, 581 P.2d 914, 916 ("[T]he malice or premeditated intent involved in the [defendant's] perpetration or attempted perpetration of the [predicate] felony is 'transferred' or 'imputed' to the commission of the homicide[.]" (emphasis added)).
[7] See Dickens v. State, 2005 OK CR 4, ¶¶ 6-7, 106 P.3d 599, 600; Kinchion v. State, 2003 OK CR 28, ¶ 8, 81 P.3d 681, 684; Brogie v. State, 1985 OK CR 2, ¶¶ 2-4, 695 P.2d 538, 541; Hatch v. State, 1983 OK CR 47, ¶¶ 15-20, 662 P.2d 1377, 1381-82; and Wade, 1978 OK CR 77, ¶¶ 2-3, 581 P.2d at 915.
[8] The State's reliance on Hindman v. State, 1982 OK CR 98, ¶¶ 6-9, 647 P.2d 456, 457, is misplaced. Hindman was not the buyer, but rather an intermediary for the seller, helping to set up the sale. Hindman actively and directly assisted the seller in the actual drug sale (distribution) to the buyer.
[9] The Honorable M. John Kane, IV, Vice-Chief Justice of the Oklahoma Supreme Court, sitting by assignment of the Chief Justice in place of Presiding Judge Scott Rowland who recused.
[10] The Honorable James Winchester, Justice of the Oklahoma Supreme Court, sitting by assignment of the Chief Justice in place of Justice Dana L. Kuehn, following her appointment to the Oklahoma Supreme Court.




LUMPKIN, JUDGE: DISSENTING 
¶1 I join Judge Lewis' excellent analysis of the Oklahoma felony murder statute, 21 O.S. § 701.7(B). I write separately to add a historical perspective to the Legislature's response the last time this Court sought to narrow the application of the statute. This history reveals the legislative intent for § 701.7(B) to be applied broadly to all persons connected with the commission of the enumerated crimes. 
¶2 In Hatch v. State, 1983 OK CR 47, ¶ 32, 662 P.2d 1377, 1384 this Court applied the felony murder doctrine to the appellant who was sent out of the victims' home by his accomplice while his accomplice carried out two murders inside the home. The Court determined, "[t]he legislature's definition of murder in 701.7(B) is a reflection of the policy that one who, by his willful criminal conduct, sets in motion a chain of events so perilous to the sanctity of human life that death results therefrom; must bear the ultimate responsibility for his actions." The felony murder doctrine was also applied in Brogie v. State, 1985 OK CR 2, ¶ 45, 695 P.2d 538, 547-548, to an appellant who was present at the time of the murder, but who did not actually kill the victim by slashing her throat.
¶3 Subsequent to Hatch and Brogie, this Court applied a more narrow view of 21 O.S. 701.7(B) in State v. Jones, 1993 OK CR 36, ¶ 3, 859 P.2d 514, 515, despite the fact the language of the statute had remained unchanged since the Hatch decision. At the time of all three cases, § 701.7(B) read as follows:
A person also commits the crime of murder in the first degree murder when he takes the life of a human being, regardless of malice, in the commission of forcible rape, robbery with a dangerous weapon, kidnapping, escape from lawful custody, first degree burglary, first degree arson, unlawful distributing or dispensing of controlled dangerous substances, or trafficking in illegal drugs.
21 O.S.1991, § 701.7(B).
¶4 In Jones, the Court determined, "[t]he legislature's use of the term 'he' in the above quoted statutory language of § 701.7 cannot be interpreted to include deaths which occur at the hands of police officers, victims of the underlying felony, or innocent bystanders." Id. 1993 OK CR 36, ¶ 7, 859 P.2d at 515. "Therefore . . . we find the express language of Oklahoma's felony-murder statutes precludes prosecutions where the victim was killed by someone other than the defendant or an accomplice." Id. 1993 OK CR 36, ¶ 8, 859 P.2d at 515.
¶5 In 1996, the Legislature responded to the approach taken in Jones. The Legislature amended the felony-murder statute as follows:
A person also commits the crime of murder in the first degree murder when he takes the life of a human being, regardless of malice, in the when that person or any other person takes the life of a human being during, or if the death of a human being results from, the commission or attempted commission of murder of another person, shooting, or discharge of a firearm or crossbow with intent to kill, intentional discharge of a firearm or other deadly weapon into any dwelling or building as provided in Section 1289.17A of this title, forcible rape, robbery with a dangerous weapon, kidnapping, escape from lawful custody, first degree burglary, first degree arson, unlawful distributing or dispensing of controlled dangerous substances, or trafficking in illegal drugs.
21 O.S.Supp.1996, § 701.7(B).
¶6 This Court recognized the legislative intent of the 1996 amendment in 2003 when it decided Kinchion v. State, 2003 OK CR 28, ¶ 6, 81 P.3d 681, 683, stating in part:
This Court held [in State v. Jones] that the express language of the felony-murder statute precluded prosecutions where the victim was killed by someone other than the defendant or an accomplice. In 1996, section 701.7(B) was amended and the language broadened to include deaths, which occur at the hands of the intended victim of the underlying felony, police officers, or innocent bystanders.
2003 OK CR 28, ¶ 6, 81 P.3d at 683.
¶7 This Court noted, "[t]he amended language is consistent with [this Court's] long-standing interpretation of the felony murder doctrine." Id. 2003 OK CR 28, ¶ 7, 81 P.3d at 683 (citing Hatch v. State, 1983 OK CR 47, 662 P.2d 1377.
¶8 In Dickens v. State, 2005 OK CR 4, ¶ 8, 106 P.3d 599, 601, the Court made it clear that "first degree murder occurs 'when that person or any other person takes the life of a human being' in the commission of enumerated felonies." "This clear, unambiguous language subjects Appellant to prosecution and conviction under our felony murder statute. That a police officer killed a codefendant does not relieve Appellant of responsibility for the death." Id. Further:
When reviewing the plain language of this statute as amended, the intent is absolutely clear on its face: in 1996 the legislature wanted to bolster § 701.7(B) to include any murder that occurs as a result of an enumerated felony. In other words, it appears the legislature recognized the grave danger these type of acts created for all persons involved and wanted to hold those who created the danger accountable. 
2005 OK CR 4, ¶ 4, 106 P.3d at 602 (Lumpkin, J. specially concurring).
¶9 This history shows that the Legislature has clearly intended for the Felony Murder Doctrine to apply to third persons when their participation in felonious conduct results in the death of another. Sufficient evidence was presented in this case to show that Appellant was involved in felonious conduct and that his involvement was sufficient to establish a nexus between the felonious conduct and the resulting deaths pursuant to Wade v. State, 1978 OK CR 77, ¶ 4, 581 P.2d 914, 916. The majority should not make the same mistake this Court made in Jones in seeking to narrow the application of the statute when both the Legislature and this Court have clearly identified the legislative intent to apply the statute broadly to all persons involved in the enumerated criminal conduct. Therefore, I dissent to the majority's decision to reverse the conviction and remand this case for a new trial.




LEWIS, JUDGE, DISSENTING:
¶1 I respectfully dissent. Simms was properly convicted of first degree murder for arranging a purchase or pretended purchase of marijuana in which the seller and his companion were shot to death by Simms or his armed confederate. In the unpublished Daniel opinion, the Court reasoned that because a buyer/recipient of controlled drugs was not an aider or abettor of the seller/distributor, and thus not a principal to the drug distribution crime, he could not be convicted of felony murder. Daniel, slip op. at 11-12.
¶2 Daniel was flawed in its failure to accord full effect to the expansive language and legislative intent of the felony murder statute as amended in 1996. The Court today doubles down on Daniel, stating that this case again presents the "novel" issue of whether a buyer can be held liable as a principal to the seller's drug crime. But this point of law only determines the outcome if the defendant's status as a principal to the seller/distributor is essential. The real issue is simply whether the current felony murder statute permits a conviction based on the Appellant's conduct.
¶3 Under the statute, a person commits the crime of first degree murder, "regardless of malice, when that person or any other person takes the life of a human being during, or if the death of a human being results from, the commission or attempted commission of . . . unlawful distributing . . . of controlled dangerous substances." 21 O.S.Supp.2012, § 701.7(B)(emphasis added). Neither this section nor controlling case law precludes a murder conviction of the buyer/recipient when human life is taken during, or as a result of, a seller/distributor's crime of drug distribution. Liability arises not from the buyer/recipient's status as an aider or abettor of the seller/distributor, but rather from the language of the statute, its legislative intent, and the scope of the felony murder rule in our jurisprudence.
¶4 The policy of Oklahoma's felony murder rule is that one whose willful criminal conduct sets in motion a chain of events so perilous to life that death results must bear the ultimate responsibility for his actions. Kinchion v. State, 2003 OK CR 28, ¶ 7, 81 P.3d 681, 684 (quoting Hatch v. State, 1983 OK CR 47, ¶ 32, 662 P.2d 1377, 1384)(affirming felony murder conviction of defendant who did not personally carry a loaded weapon, but participated in robbery where his armed accomplice was killed by the intended victim).
¶5 The current first degree murder statute punishes homicides during certain enumerated felonies that create substantial foreseeable risks of death, not only to the intended victims, but also to the perpetrators, their accomplices and accessories, law officers, and innocent bystanders. See Kinchion, 2003 OK CR 28, ¶ 6, 81 P.3d at 683-84. The Legislature has recognized "the grave danger these type[s] of acts created for all persons involved and wanted to hold those who created the danger accountable" within the expanded scope of the statute. See Dickens v. State, 2005 OK CR 4, ¶ 4, 106 P.3d 599, 602 (Lumpkin, J., specially concurring)(emphasis added)(finding intent of the amended 1996 statutory text was "to enlarge the reach" of section 701.7(B)).
¶6 This statute now authorizes a conviction where any person takes a human life during, or the death of a human results from, a crime of drug distribution. 21 O.S.Supp.2012 § 701.7(B)(emphasis added). Our case law further requires "a nexus between the underlying felony and the death of the victim," meaning that the defendant's wrongful conduct was "potentially dangerous in light of the facts and circumstances surrounding both the felony and the homicide." Wade v. State, 1978 OK CR 77, ¶¶ 4-5, 581 P.2d 914, 916 (emphasis added)(finding defendant's felonious possession of loaded firearm in establishment where alcohol is consumed created "the potentiality for danger to human life under all the facts and attendant circumstances" to support murder conviction in fatal bar shooting).
¶7 A controlled drug buyer/recipient thus commits first degree murder, regardless of malice, when the death of a human occurs during, or as a result of, a drug distribution crime, if the buyer/recipient's wrongful and potentially dangerous conduct during that crime is a "substantial factor" in causing the victim's death, see OUJI-CR(2d), Instruction No. 4-60; or in other words, when the buyer/recipient's wrongful and potentially dangerous conduct during the predicate felony "threatens or destroys life." Id.; see also Dickens, 2005 OK CR 4, ¶ 8, 106 P.3d at 601 (affirming felony murder conviction where the accomplice was lawfully killed by police during flight from armed robbery). Liability rests not on whether a buyer/recipient aids or abets a seller/distributor, but upon the buyer/recipient's own life-threatening or life-destroying conduct under "the facts and circumstances surrounding both the felony and the homicide." Wade, supra.
¶8 Appellant's jury was instructed to acquit him unless it found beyond a reasonable doubt that his conduct during this drug distribution crime was "a substantial factor" in the victims' deaths; that his actions threatened or destroyed their lives. Appellant's conduct in arranging this drug deal, during which the Appellant or his confederate murdered the victims and stole their marijuana, is legally sufficient to support his convictions. I therefore dissent.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1993 OK CR 36, 859 P.2d 514, STATE v. JONES
Discussed at Length
 1978 OK CR 77, 581 P.2d 914, WADE v. STATE
Discussed at Length
 1926 OK CR 78, 244 P. 460, 34 Okl.Cr. 56, Jefferson v State
Discussed
 2003 OK CR 28, 81 P.3d 681, KINCHION v. STATE
Discussed at Length
 2005 OK CR 4, 106 P.3d 599, DICKENS v. STATE
Discussed at Length
 1954 OK CR 17, 266 P.2d 988, BROWN v. STATE
Discussed
 1982 OK CR 98, 647 P.2d 456, HINDMAN v. STATE
Discussed
 1983 OK CR 47, 662 P.2d 1377, HATCH v. STATE
Discussed at Length
 1983 OK CR 72, 664 P.2d 1047, DYLE v. STATE
Discussed
 1985 OK CR 2, 695 P.2d 538, BROGIE v. STATE
Discussed at Length
 2000 OK CR 14, 8 P.3d 883, 71 OBJ 2063, Gilson v. State
Discussed
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 13.1, Required Service of Minimum Percentage of Sentence - Offenses Specified
Cited
 21 O.S. 172, Definition of Principals
Cited
 21 O.S. 701.7, Murder in the First Degree
Discussed at Length
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 2-101, Definitions
Cited
 63 O.S. 2-401, Prohibited Acts A - Penalties
Cited
 63 O.S. 2-402, Prohibited Acts B - Penalties
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA